Cyrus Johnson CA SBN 225797
CYRUS JOHNSON ESQ.
7300 SH 121 STE. 300
McKinney, Texas 75070
Telephone: (972) 516-4322
Email: email@cyrusjohnson.com

Attorney for Plaintiff

National Specialty Pharmacy, LLC

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL SPECIALTY PHARMACY, LLC | Case No.: ___5:23-CV-4357___ |
| Plaintiff, | **COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| SAMEER PADHYE, AN INDIVIDUAL MAYBELLINE SANA, AN INDIVIDUAL, RAYNE BRIDGES, AN INDIVIDUAL, ABHINAY PADHYE, AN INDIVIDUAL, COLIGOMED INC., A DELAWARE DOMESTIC CORPORATION, ENLIL, INC., A DELAWARE DOMESTIC CORPORATION, and Does 1 to 50, inclusive, | |
| Defendants. | |

Plaintiff National Specialty Pharmacy, LLC ("NSP") by and through its undersigned attorneys, for its Complaint against Sameer Padhye ("Padhye"), Maybelline Sana ("Sana"), Rayne Bridges ("Bridges"), Abhinay Padhye ("A-Padhye"), Coligomed, Inc. ("Coligomed"), Enlil, Inc. ("Enlil"), dba "Taycann Wellness" ("Taycann"), and Does 1-50 (collectively, "Defendants"), hereby demands a jury trial and alleges as follows:

f

## NATURE OF THE ACTION

1.      NSP is a leading compounding pharmacy incorporated in Delaware with operations in Nevada, California, and Tennessee. NSP hired the Defendants Padhye, Sana, and Bridges to manage and build its business. However, despite being bound by contract, relevant law, and regulation governing pharmacy businesses, and working with other Defendants, instead conspired to damage, defraud, and deprive company of its trade secrets, violating their agreements and the law, in order to intentionally and willfully and negligently harm company, and advantage themselves.

2.      Defendants Padhye, Sana, and Bridges, working for / with / through Defendants A-Padhye, Coligomed and Enlil, and likely others, have since established new, direct, and competing business ventures while making use of NSP property, customer and other information, data, processes, and other trade secrets. NSP brings this action to enjoin the Defendants' further malfeasance, and to recover damages for the damage and harms caused.

## THE PARTIES

2.      Plaintiff National Specialty Pharmacy, LLC, LLC is a Delaware Limited Liability Company with its principal place of business in Las Vegas, Nevada. NSP also has operations and is registered to do business in California and Tennessee. The company is owned in majority interest by SSD Medventures, LLC, a Delaware limited liability company owned and managed by Sanjiv S. Dhawan ("Dhawan"), the CEO of both companies.

3.      Defendant Sameer Padhye is, on information and belief, an individual who resides permanently in Santa Clara County, California.

4.      Defendant Maybelline Sana (also known as Maybelline Ash) is, on information and belief, an individual who resides in Clark County, Nevada. On information and belief, Defendant Sana is now doing business under the (evidently unregistered) assumed business name, "Taycann Wellness."

5.      Defendant Rayne Bridges is, on information and belief, an individual who may reside in Clark County, Nevada and/or San Bernadino County, California.

COMPLAINT FOR DAMAGES

f

6.      Defendant Abhinay Padhye is, on information and belief, a citizen of India, who resides in Bengaluru, Karnataka, India. A Padhye, on information and belief, is the brother of Defendant Padhye.

7.      Defendant Coligomed, Inc. is, on information and belief, a Delaware corporation. On information and belief Defendant Coligomed has a subsidiary company, Coligomed India Private Limited in India. On information and belief, Defendant A-Padhye owns and/or controls Coligomed. On information and belief, it is suspected that Defendant Padhye also owns and/or controls Coligomed.

8.      Defendant Enlil, INC. is, on information and belief, a Delaware corporation. On information and belief, Defendant Padhye established and owns and/or controls Enlil.

9.      On information and belief, Does 1-50 are now, and at all times relevant to this Complaint were, individuals or entities who were employees and/or agents of the other Defendants and/or otherwise involved in Defendants' acts of disruption, trade secret misappropriation and fraud and unfair business practices.

10.     Plaintiff is informed and believes that other third-party companies, and other persons, presently unknown, formed a part of the conspiracy to defraud, damage, and deprive Plaintiff, and were additionally a part of the individual conspiracies to defraud, and received benefit from the joint and individual conduct of Defendants, and of each respective Defendant.

11.     The true names or capacities, whether individual, corporate, associate or otherwise, of Defendants Doe One to Doe Fifty, inclusive, are unknown to Plaintiff who therefore sues said Defendants by such fictitious names. Plaintiff will amend his complaint by inserting the true names or capacities, with appropriate charging allegations, when the same is ascertained. Plaintiff is informed and believes and based thereon allege that each of the Defendants named herein as a Doe

is negligently or in some other manner responsible for the events and happenings herein referred to and were a cause of the injury and damages to Plaintiff alleged herein.

12.     Plaintiff is informed and believes and based thereon alleges that, at all times mentioned herein, Defendants, and each of them, was the agent, servant, employee, or joint venturer of his co-Defendants, and that, in doing the acts herein alleged, were acting within the scope, course and authority of said agency, employment, or joint venture.

13.     On information and belief that Defendants also acted singly and individually in defrauding Plaintiff.

14.     Plaintiff is informed and believes and based thereon alleges that, at all times mentioned herein, that Defendant Sameer Padhye, was the leader, primary leader, or one leader, of the conspiracy alleged herein, directing, and coordinating the behavior of fellow Defendants to defraud, damage, and deprive Plaintiff, and in the alternative is singly and individually responsible for the conduct alleged herein.

## JURISDICTION AND VENUE

15.     This Court has original jurisdiction over the subject matter of this action pursuant to 18 U.S.C. § 1836(c), 28 U.S.C. § 1331, and 28 U.S.C. § 1332. This Court has supplemental jurisdiction over the other claims asserted herein pursuant to 28 U.S.C. § 1367.

16.     Venue is proper in this District under 28 U.S.C. § 1391(b)-(d) because a substantial portion of the events or omissions giving rise to the claims herein occurred in this District, Defendant corporations have the most significant contacts with this District, and the parties contractually agreed that venue is proper in this District.

## INTRADISTRICT ASSIGNMENT

17.     Pursuant to Civil L.R. 3-2(c), and General Order No. 44, this action arises in the

f

county of Santa Clara, and should be assigned to the San Jose Division.

## GENERAL ALLEGATIONS

### NATIONAL SPECIALTY PHARMACY, LLC PRODUCES AND DELIVERS LIFE SAVING PHARMACEUTICAL PRODUCTS NATIONWIDE THROUGH PROPRIETARY METHODS, MANNERS, AND MEANS WHICH IT PROTECTS

18.     National Specialty Pharmacy, LLC, a Delaware company qualified to do business in California, and with its main facility in Las Vegas, Nevada, is a compounding pharmacy providing various life-saving drugs to patients nationwide. It's gross revenue is estimated to be $12M per year.

19.     The development, compounding, marketing, and distribution of such important products (including under government contract) poses unique business requirements and challenges. Due to many regulations and laws, and for reasons of medical efficacy, formulations must be technically precise. Information about its customers, client companies, sellers, suppliers, and distributors contain critical and unique methods, knowledge, and relationships built over time. Trust in company reliability, stability, consistency, and transparency (technical and business "good will") are key ingredients for the success of the business.

20.     NSP's various methods and methodologies in the production, sale, and distribution of its products are the result of seven years of operational business experience, the decades of experience brought by its team members, and thousands of hours of process refinement. These methods and methodologies contain unique and proprietary information ("trade secrets").

21.     NSP has invested $15-20 million over the life of the company to realize success.

21.     NSP is a success in its market, and the potential for future growth and competitive advantage being realized year over year is vast, and for years has been an ongoing reality.

22.     Because NSP is doing important work for public health, and is a highly regulated business, it ensures that its security and information security processes and procedures comply with

f

its industry's exacting security requirements, and NSP has spent substantial monies to do so. These include technical encryption, password protections, company policies, and legal agreements binding employees and others.

23.     The confidentiality of company processes and methods regarding its products and customers are critical to their value, and to the overall value and ongoing success of the company. These processes and methods are not known to the public, nor to competitors. If competitors were to come to learn these, or receive any information or data about same, they could replicate these processes and methods (and appropriate key business contacts and relationships) to the detriment and irreparable harm of NSP. Maintaining confidentiality of NSP's trade secrets is thus critical to NSP's unique value proposition, and its employees and others are instructed and required to abide strict technical and legal strictures.

24.     NSP requires all of its employees or contractors to agree to the most stringent agreements with regard to company information and data, for their safeguarding and security. It requires them to follow company processes. It requires them, as the law provides, to keep company information confidential following their departure. These requirements are articulated in various agreements employees, and the defendants, were required to execute as a condition of employment. [Exhibit A, appended hereto]

### NSP HIRES DEFENDANTS PADHYE, SANA, AND BRIDGES

25.     On or around September 2022, Defendant Padhye made a presentation and representations to the Company CEO to the effect that, utilizing his unique skills and special business traits and methods, that he could grow revenue of Company [specifically stating he could (and would) "increase the number of customers by 10,000] through his special knowledge and work in a leadership role with NSP. On information and belief, the truth was otherwise, and this was a misrepresentation. In reality, despite work in (non-pharma) technology and the representations made,

f

Defendant Padhye had never worked for a pharmacy company before, and lacked the experience and skill represented to Plaintiff, and had other undisclosed plans.

26.    Company agreed, relying upon the untrue representations and promises made, to hire Defendant Padhye.

27.    On October 11, 2022, Plaintiff NSP hired Defendant Padhye with the title of "Chief Strategy Officer" for NSP with specific responsibility for, and the expectation of, increasing company revenue, per the previous discussions. Padhye was an at-will employee. Less than nine months later, on June 22, 2023, Padhye voluntarily resigned his position with NSP. [Exhibit A, appended hereto.] He neither generated "10,000" new customers, and on information and belief, likely lost the Company customers.

28.    Previously, on May 21, 2018, Plaintiff NSP had hired Defendant Sana as a pharmacy technician. Later, Defendant Sana was promoted to the role of "Director of Operations and Human Resources" during the same space of time as Defendant Padhye was hired and under the same Company plans. Sana likewise was an at-will employee. Sana was assigned to work closely with Defendant Padhye on company operations and growth. Soon after Padhye's resignation, on July 5, 2023, Sana submitted a letter of resignation with an effective date of Monday, July 31, 2023. [Exhibit A, appended hereto.] Defendant Sana departed earlier on July 14, 2023.

29.    On December 6, 2022, NSP hired Defendant Rayne Bridges ("Bridges") as a "Lead Sales Account Executive" in order to also boost sales. Bridges was an at-will employee. One week after Padhye's termination on June 28, 2023, Bridges submitted a letter of resignation giving an effective date of July 14, 2023. [Exhibit A, appended hereto.] Bridges had previously resigned once before, in June, but retracted the resignation before resigning finally a second time. On information

COMPLAINT FOR DAMAGES

f

and belief this was done to afford co-conspirator Bridges to improperly collect Company data following departure of fellow Defendant Padhye.

30.    Each of the three Defendants executed a "Confidential Information and Invention Assignment Agreement," "Conflict of Interest Guidelines," and an acknowledgement of receiving and reviewing NSP's "Employee Handbook" which contained additional detailed requirements about company information and employee behavior. [Exhibit A, appended hereto.]

## DEFENDANTS PADHYE, SANA, AND BRIDGES DEFRAUD, DAMAGE, AND DEPRIVE IN A CONSPIRACY AMONG THE DEFENDANTS

31.    On information and belief, beginning in and around November 2022 to the present, and with possible pre-planning, and in violation of their employment agreements and applicable law and regulations, the Defendants acted in concert in a coordinated plan to negligently, knowingly, and intentionally defraud, damage, and deprive Plaintiff NSP in a variety of ways, settings, and for a variety of purposes for their own benefit, injuring and causing damage to Plaintiff.

32.    Among other actions, the Defendants worked together: (a) to convert NSP funds and company property to their own uses, (b) to appropriate business advantages and opportunities belonging to Plaintiff NSP to themselves, (c) to breach the terms of their agreements with company in material respects, (d) to transmit to themselves and others company confidential and proprietary information for suspected but not yet proven reasons during employment and *after employment*, (e) to appropriate company funds, intellectual property, and other property to themselves, and (f) to willfully, intentionally and variously cause intentional disorder, division, and disruption (damage) to Company operations by various means for self-interested reasons.

33.    On information and belief, the Defendants caused intentional disruption and damage within company, acting with the collaboration, inducement, involvement, and/or to the benefit of competitors and competing businesses (Defendants Enlil, Coligomed, and Does), damaging company for their own improper benefit.

f

34.     Specifically, on information and belief, on or around November 2022, and thereafter, Defendant Sana, working in concert with the other Defendants and individually, willfully, and maliciously and deliberately disclosed and shared confidential and proprietary Company and Third-Party information, namely payroll records and payroll amounts of employees, to third parties, employees. For instance, Sana told one employee that she was the lowest paid in the Company, revealed the salary of another, and also disclosed private proprietary net worth information about Company owner. The effect of the intentional disclosures was predictable damage by disruption to corporate operations and teams, and increased Company cost due to new revenue outlays for employee retention precipitated by the breach.

35.     On information and belief, on or around July 11, 2023, Defendant Sana, working in concert with the other Defendants and individually to damage Company, willfully, and maliciously and deliberately uttered, spread, and repeated a series of false statements to co-workers -- specifically that company founder and CEO Dhawan had said about a senior employee, and his wife, that he, "Wished [they] would just die." The statement was untrue. The outrageous rumor caused predictable emotional distress and disorder to the team.

36.     On information and belief, on or around February-July 2023, Defendants, working in concert and individually, made fraudulent accounting and payroll entries not authorized by Company, including: (a) the unilateral changing of the compensation to be paid to an employee by Defendant Padhye, (b) the addition of contrived "vacation pay" supposedly owed to one of the Defendants by Defendant Sana to benefit Defendant Padhye, who had already expended his vacation time, (c) unapproved "adjustments" to payroll records made by Defendant BRIDGES, and (c) the submission of dubious cost reimbursements by Company by Defendants.

37.     On information and belief, on or around February 2023, Defendant Sana, working in concert with the other Defendants and individually, willfully, and maliciously and deliberately uttered more false statements (untrue rumor) to co-workers, specifically to a Company operations

leader, that "Sameer was brought in by Mr. Dhawan to prevent you from stealing." The statement was untrue and made up by Sana. More chaos and time expense followed.

38.     On information and belief, on or around February 2023, Defendant Padhye, working in concert with the other Defendants and individually, caused Plaintiff to unnecessarily spend the sum of nearly $50,000 of company funds on a software program or proposed programs to be provided by Defendant A-Padhye, *Defendant Padhye's brother*. The software was never authorized by Company, nor delivered in a usable format, and from which transaction. Defendant Padhye received personal benefits. Defendants did not disclose that the software was intended to be a direct competitor of Plaintiff.

39.     On information and belief, on the account of multiple Company personnel, Defendant Padhye's conduct in the workplace was typically unclear, bullying, and abusive, and grossly counter-effective and seemingly at times intentionally destructive to Company operations, personnel morale, and financial performance.

40.     In one example of Defendant Padhye's seemingly intentional destructive behavior, on or around May 18, 2023, upon a gay employee expressing emotion at a particularly stressful circumstance, Defendant Padhye angrily remonstrated employee, stating words to the effect, "Do not cry. You are a man. Men do not cry." Padhye shocking statements and conduct precipitated ongoing reparative corporate meetings and countermeasures at additional cost and distress to Company operations.

41.     In or around November 2022, one employee, citing the "bad vibes" of Defendant Padhye immediately after his presentation, promptly left the job, instantly, on the same day.

42.     On information and belief, on or around November 2022, Defendant Padhye proposed, and promoted to Company personnel the illegal idea to provide tangible inducements to prospective customers in order to secure customer business, suggesting they be given improper inducements ("iPhones").

f

43.     On information and belief, on or around February 2023, Defendant Padhye, working in concert with the other Defendants and individually, in violation of the law and relevant regulations, attempted to instruct the work of licensed personnel, including Company pharmacists and technicians, and the Company's Pharmacist in Charge (PIC), in the filling of prescriptions, a direct violation of law.

44.     As if the above behavior were not enough to damage Company, Defendants Padhye and Sana were frequently coordinating their activities in secret together; holding private closed-door and off-site meetings frequently while other essential team members were excluded, traveling together to and from events, and delivering the messages of each other – further unnerving and alienating Company employees.

**POST EMPLOYMENT BEHAVIOR BY DEFENDANTS PADHYE, SANA, AND BRIDGES**

45.     Following the Defendants respective separations from Company (June 22, 2023 (Padhye), July 5, 2023 (Sana), and July 14, 2023 (Bridges)), on information and belief that each and all of the Defendants willfully and maliciously and in direct violation of the law and each of their former employee agreement's extant provisions, improperly and illegally *electronically accessed company systems and data.* During a technical review made on August 5, 2023, it was discovered that multiple post and pre-termination improper accesses had been made.

46.     On information and belief, as *non-employees* and *subject to ongoing confidentiality strictures they had agreed to themselves,* the Defendants accessed Company systems and intellectual property from sites located in San Jose, California and Burlingame, California, and Las Vegas, Nevada.

47.     On information and belief at least one Defendant, namely Bridges, has been engaging in a pattern of intentional disparagement through the uttering of false information, statements, and rumors about Company to working partners and possibly clients. Specifically, *after her employment*, Defendant Bridges told at least one client company in Tennessee that company was no longer legally

f

entitled and was no longer doing business in a category known as "white label" business (an untrue statement). Additionally, in a private moment away from others, in or around July 2023, Defendant Bridges propositioned a client company employee to leave their position and come to work for her employ in violation of her non-competition agreement. Such statements and behavior are inherently harmful/destructive to Plaintiff, presumed to be harmful, and are the cause of ongoing harm and damage to Company.

48.     The net effects of the conduct alleged by the Defendants over nine short months (and continuing until August 4, 2023, *post*-employment) included: grave dangers of compromise to Company data and systems; a loss of personnel, operational efficiency, and injuries to team morale; real losses of revenue from Company expenditures and business losses; employee distrust of management hampering productivity and operations of Company, increased costs, unnecessary expenditures, and extensive financial, market standing, good will, competitive advantage, and other property losses.

## DEFENDANTS CONSPIRE TO ABUSE POSITIONS OF EMPLOYMENT, TRUST, CONTRACT WITH NSP TO IMPROPERLY EXPLOIT NSP's PROPRIETARY INFORMATION FOR ILLEGAL COMPETITIVE ENDS

49.     During these times and events, two related businesses were active, if in the background. Enlil, on information and belief, formed and owned and/or operated by Defendant Padhye is a Campbell, California company calling itself a "one-stop-shop [for] Medtech teams." Coligomed, on information and belief, is a San Jose company which is owned and/or operated by Defendant A-Padhye (and possibly Defendant Padhye) is "a stealth mode digital health platform startup." The latter company has a web program and an app which is listed available on the Apple App Store.

50.     On information and belief, Defendants Padhye, Sana, and Bridges have been working together in a conspiracy (and also individually) with the above Defendant companies and Defendant

f

A-Padhye which Defendants received and improperly used and are using the trade secrets and other proprietary and confidential information of Company

51.     On information and belief, Defendant Sana is also operating under the trade name "Taycann Wellness," in concert with the other Defendants, to build a competing company to NSP, in violation of law and her agreement with Company.

52.     On information and belief, after departing NSP, Defendant Sana contacted *current* personnel of NSP, inviting them to do marketing work for her new undertaking.

53.     On information and belief Defendants have been and intend to directly compete with NSP, making use of NSP's trade secrets and other intellectual property.

54.     On information and belief, Defendants converted the trade secrets of NSP, engaged in fraud in their employments and contractual arrangements, and acted in violation of their agreements in behavior amounting to unfair competition.

55.     On information and belief, Defendants' conduct includes the intentional taking of the property, monies, intellectual property, trade secrets, and business assets, strategies, market advantages, methods and formulas and technologies of Plaintiff between October 2022 to the present.

56.     On information and belief, various methods of taking were involved including, without limitation, false promises, intentional misrepresentations, concealments, intentional breaches of contract obligations and implied covenants, tortious interferences with business and related business parties and agreements, misappropriation, disparagement, business and trade libel, and outright conversion, and conspiracy to convert, Company assets.

57.     On information and belief, at all times mentioned herein, Defendants, were joint members of an overall coordinated plan to conspire and collude together toward a corrupt, illegal, and fraudulent end (the "Conspiracy") causing injury to the legal rights, business advantage, property, intellectual property, trade secrets, and reputation of Plaintiff which damaged Plaintiff.

f

**FIRST CAUSE OF ACTION**

**FRAUD – INTENTIONAL MISREPRESENTATION (Civ. Code, §§ 1572-1573)**

**(By National Specialty Pharmacy, LLC against Defendants Padhye, Sana, and Bridges)**

58.     Plaintiff incorporates every allegation contained in the preceding paragraphs, as though set forth fully herein.

59.     Defendants Padhye, Sana, and Bridges, in their roles of employees of NSP, committed actual and constructive fraud, as a party to a contract, and by connivance, with intent to deceive Company and its representatives, to induce behavior in contract, and to induce the making of a contract.

60.     Each and all represented and promised to Company and its owners and managers that each would be doing the tasks of their employment as represented by them without the intent to do so.

61.     Instead, each and/or all three used Company time and resources toward their own purposes, plans, ends, and corrupt motives. After making representations untrue that they knew to be untrue, Defendants engaged in serial acts intended to deceive and/or suppressing what was true.

62.     Defendant Padhye represented himself to be competent and capable of growing business in a pharmaceutical company when in fact he had no such skill, knew he had no such skill, concealed his lack of skill, and in fact failed at generating any new business at all, while instead causing major disruption. As further insult to these injuries, for his promises, Padhye demanded and received the highest compensation within the Company.

63.     By misleading words and other conduct, as acts and omissions of fact, to the prejudice of Company, and those employed by Company, each Defendant breached its legal duty under the special relationship of employment, harming Plaintiff.

**SECOND CAUSE OF ACTION**

**FRAUD – FRAUDULENT CONCEALMENT (Civ. Code, § 1710(1), (3))**

**(By National Specialty Pharmacy, LLC against Defendants Padhye, Sana, and Bridges)**

f

64.     Plaintiff incorporates every allegation contained in the preceding paragraphs, as though set forth fully herein.

65.     Defendants suggested to the Plaintiff, and to others, facts that were untrue, that they knew were untrue, through statements made: about salaries earned, vacation time taken, compensation owed, confidentiality duties adhered to, and more.

66.     Likely to mislead, Defendants suppressed facts and/or colored fact presentations about their responsibilities, roles, loyalty, legal status, and performance with Company in ways calculated to mislead.

67.     Defendant Bridges intentionally misrepresented the licensing, business, and contracting status of NSP, intentionally misrepresented her role with NSP, and, under the guise of speaking for NSP, fraudulent attempted to "recruit" from a direct competitor to NSP an employee or agent to her new enterprise – another competitor to NSP.

### THIRD CAUSE OF ACTION

### FRAUD – PROMISSORY FRAUD

### (Civ. Code § 1710(4)) (By National Specialty Pharmacy, LLC against Defendants Padhye, Sana, and Bridges)

68.     Plaintiff incorporates every allegation contained in the preceding paragraphs, as though set forth fully herein.

69.     Without an intent to fully perform according to their agreements with Company, Defendants promised contra wise, to fulfill the employment, management, and fiduciary duties of their positions.

### FOURTH CAUSE OF ACTION

### NEGLIGENT MISREPRESENTATION (Civ. Code § 1710(2))

COMPLAINT FOR DAMAGES

f

**(By National Specialty Pharmacy, LLC against Defendants Padhye, Sana, and Bridges)**

70.     Plaintiff incorporates every allegation contained in the preceding paragraphs, as though set forth fully herein.

71.     Without reasonable grounds to believe it to be true, the Defendants asserted to be bound by their employment terms and by the various legal obligations included in their roles and legal requirements outliving their employment.

## <u>FIFTH CAUSE OF ACTION</u>

**BREACH OF CONTRACT (Gov. Code § 1624)**

**(By National Specialty Pharmacy, LLC against Defendants Padhye, Sana, and Bridges)**

72.     Plaintiff incorporates every allegation contained in the preceding paragraphs, as though set forth fully herein.

73.     The "At-Will Employment, Confidential and Invention Assignment Agreement", appended at Exhibit A hereto, to which Plaintiff faithfully adhered, includes the following (and other) terms which Plaintiff alleges were violated by the Defendants:

(a) "I agree that during and after my employment with the Company, I will hold in the strictest confidence, and take all reasonable precautions to prevent any unauthorized use or disclosure of Company Confidential Information" (Sec 3, subsection B)

(b) "Third Party Information" is to be similarly treated as Confidential Information. (Sec 3, subsection D)

(c) Activity which conflicts with obligations to Company is prohibited.

74.     Plaintiff alleges the Defendants, each singly, and all in concert, violated various terms of their contract with Company in disclosing company trade secrets during and after employment, by mishandling trade secrets, and by undertaking activity conflicting with their obligations to Company, to wit, by self-dealing statements, behaviors, and actions outside of the scope and duties of their respective contractual obligations resulting in varied, wide-spread, and extensive damages to Plaintiff.

f

**SIXTH CAUSE OF ACTION**

**BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

**(By National Specialty Pharmacy, LLC against Defendants Padhye, Sana, and Bridges)**

75.    Plaintiff incorporates every allegation contained in the preceding paragraphs, as though set forth fully herein.

76.    Defendants were subject to conditions calling for their performance in good faith and in a manner of fair dealing with Plaintiff to whose rights they were legally bound, namely, proper performance of their working responsibilities.

77.    Defendants willfully failed to perform, unfairly denying Plaintiff's rights to receive the benefit of the contract.

**SEVENTH CAUSE OF ACTION**

**TORTIOUS INTERFERENCE**

**(By National Specialty Pharmacy, LLC against All Defendants)**

78.    Plaintiff incorporates every allegation contained in the preceding paragraphs, as though set forth fully herein.

79.    Defendants did intentionally, and/or with foreknowledge of Company contracts, competitors, operational plans, unique risks, and challenges take action to intentionally and knowingly interfere with Company operations, economic advantages, and contractual advantages resulting in damage to Company.

80.    Defendant action included breaches of Company trade secrets, and of other proprietary information of Company, revealing protected information, and revealing information critical to Company's competitive advantages and contractual arrangements.

COMPLAINT FOR DAMAGES

**EIGHTH CAUSE OF ACTION**

**CONVERSION**

**(By National Specialty Pharmacy, LLC against All Defendants)**

81.     Plaintiff incorporates every allegation contained in the preceding paragraphs, as though set forth fully herein.

82.     Company owned and had the right to own and possess Confidential Information, trade secrets, third-party information, and other proprietary information and other monies and property that Defendants wrongfully interfered with by wrongful appropriation of same and its re-conveyance.

83.     Company did not consent to such appropriation, and in that it involved previously private informational property, its appropriate wrought harm to Plaintiff of which Defendant's conduct was a substantial factor.

**NINTH CAUSE OF ACTION**

**CONSPIRACY TO CONVERT (Civil Conspiracy to Violate Pen. Code, § 493)**

**(By National Specialty Pharmacy, LLC against All Defendants)**

84.     Plaintiff incorporates every allegation contained in the preceding paragraphs, as though set forth fully herein.

85.     With full awareness among and in each of Defendants, Defendants did wrongfully conspire to appropriate, take, or otherwise convert property of Plaintiff in violation of Penal Code § 493. Fellow Defendants knew, agreed, and intended that the wrongful action be taken by and with the others.

**TENTH CAUSE OF ACTION**

**MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836)**

**(By National Specialty Pharmacy, LLC against All Defendants)**

f

86.     Plaintiff incorporates every allegation contained in the preceding paragraphs, as though set forth fully herein.

87.     Plaintiff was the owner and rightful possessor of various trade secrets including, without limitation: vendor and partner information, proprietary formulas, business processes, pricing strategies, pricing data, marketing methods, other data, computer and software processes and systems for a unique segment of the pharmaceutical industry, and more and that these were unique trade secrets of the Company.

88.     Plaintiff has taken reasonable measures to safeguard the security and privacy of same including technical and IT means such as encryption and password protections, legal protections, contractual agreements, Company training, Company manual review and certification by all employees, physical infrastructure controls, and other methods.

89.     Defendants, acting in concert and individually, improperly acquired, used, and disclosed the trade secrets, unjustly enriching Defendants, and directly and proximately causing damage to Plaintiff, and that such acquisition, use, and disclosure were a substantial factor in Plaintiff's harm.

90.     NSP has sustained actual losses from Defendants' misappropriation of NSP's trade secrets, and Defendants have been unjustly enriched by their misappropriation. 91. If Defendants' misconduct is not stopped, NSP will continue to suffer significant damages and irreparable injury for which there is no adequate remedy at law.

92.     Because NSP's remedy at law is inadequate, NSP seeks temporary, preliminary, and permanent injunctive relief, in addition to damages, to protect its trade secrets. On information and belief, if Defendants are not enjoined, they will continue to misappropriate NSP's trade secrets

f

for their own benefit and to NSP's detriment and will disseminate those trade secrets to current or prospective customers, partners, investors or other third parties.

93.    On information and belief, Defendants' misappropriation of NSP's trade secrets were willful, fraudulent, and malicious, and done with an intent to injure and oppress NSP.

## ELEVENTH CAUSE OF ACTION

### UNFAIR BUSINESS PRACTICES (BUS. & PROF. CODE §§ 17200 ET SEQ.)

### (By National Specialty Pharmacy, LLC against All Defendants)

94.    Plaintiff incorporates every allegation contained in the preceding paragraphs, as though set forth fully herein.

95.    Defendants, acting in concert and individually, engaged in behavior which was unlawful, unfair, and fraudulent to the Company and the rights of Plaintiff. Such behavior was also deceptive, untrue, and misleading; including that behavior detailed in Bus. & Prof. Code § 17500.

## TWELFTH CAUSE OF ACTION

### BUSINESS DISPARAGEMENT, TRADE LIBEL

### (By National Specialty Pharmacy, LLC against Defendant Bridges, and Sana and Padhye)

96.    Plaintiff incorporates every allegation contained in the preceding paragraphs, as though set forth fully herein.

97.    Defendant Bridges committed disparagement and commercial libel against Plaintiff Company by uttering knowingly untrue statements causing Plaintiff damage to its reputation, business standing and business. Defendant Bridges knowingly, and with reckless disregard for truth, told a non-Plaintiff third party that Company was not qualified to do business in Tennessee for "white label" products, and was no longer doing so. Defendant Bridges knew the statement was untrue and would cause harm to Plaintiff reputation, because others were likely to rely upon it, and it did cause of direct

financial harm (lost business and leads) as a result of statement. It is unknown in detail at this time, but on information and belief is suspected and is alleged, that fellow Defendants, given a joint conspiracy, have also likewise disparaged Plaintiff and/or participated with Defendant Bridges in a common scheme or plan to disparage Plaintiff.

98.    Defendant Bridges, and other Defendants should be immediately enjoined by the court from any further utterances.

## **PRAYER FOR RELIEF**

99.    At said times, places, and ways alleged herein, Defendants, and each of them, and together acting in concert, committed willful, malicious, negligent, and also intentionally acts against the rights of Plaintiff NSP, inflicting damages grave, certain, and not yet fully investigated/calculated.

100.    As a legal result of the actions of Defendants, and each of them, and acting in concert, Plaintiff National Specialty Pharmacy, LLC has been substantially economically damaged and injured. Plaintiff is informed and believes and based thereon alleges that said damage and injury is current, ongoing, and expected to continue without judicial intervention.

101.    As a further legal result of the Defendants' actions alleged in this matter, and each of them, and acting in concert as aforesaid, Plaintiff, is required to take investigative and diagnostic steps with regard to its Company computer and network systems, personnel conduct and policies, software diagnostics and security, and efforts to ascertain where and to whom or what companies or competitors the purloined data and information may have been re-transmitted, and addressing same. The exact amount of these additional expenses is presently unknown, and Plaintiff prays leave to amend its complaint to allege the exact amount when the same is ascertained.

WHEREFORE, Plaintiff pray for judgment as hereinafter set forth:

1.    For temporary, preliminary, and permanent injunctive relief against Defendants

requiring them and all those acting in concert with them to return NSP's trade secrets and confidential information and prohibiting Defendants and all those acting in concert with them from continuing their misappropriation of NSP's trade secrets and misuse of NSP's confidential information;

2. General damages according to proof, specific damages, compensatory damages, incidental damages, and consequential damages according to proof at trial estimated, on information and belief, at $30,000,000;

3. Punitive damages by statute, and in the court's discretion;

4. Plaintiff's attorneys' fees and all other legal costs;

5. Any interest accrued;

6. Such other relief as the court shall deem proper in this case.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands trial of all issues by a jury.


Dated:        August 23, 2023                CYRUS JOHNSON, ESQ.


                                By:    __S/Cyrus J Johnson/_____
                                       Cyrus Johnson, Esq.
                                       Attorney for Plaintiff

COMPLAINT FOR DAMAGES

f

**EXHIBIT A**

**DEFENDANT AGREEMENTS**
[APPENDED]

1.  NSP Letter confirming termination by Maybelline Sana, Sameer Padhye, July 5, 2023
    Conflict of Interest Certification, Sameer Padhye, October 11, 2022
2.  At-Will Employment, Confidential Information, and Invention Assignment Agreement,
    Sameer Padhye, October 11, 2022
3.  List of Prior Inventions and Original Works of Authorship (none), Rayne Bridges, October
    11, 2022
4.  Employee Handbook and Acknowledgement, Rayne Bridges, October 11, 2022


5.  Resignation letter, Maybelline Ash, July 5, 2023
    Conflict of Interest Certification, Rayne Bridges, May 21, 2018
6.  At-Will Employment, Confidential Information, and Invention Assignment Agreement,
    Rayne Bridges, December 7, 2022
7.  List of Prior Inventions and Original Works of Authorship (none), Rayne Bridges,
    December 8, 2022
8.  Employee Handbook and Acknowledgement, Rayne Bridges, May 21, 2018


9.  Resignation letter, Rayne Bridges June 28, 2023
    Conflict of Interest Certification, Rayne Bridges, December 6, 2022
10. At-Will Employment, Confidential Information, and Invention Assignment Agreement,
    Rayne Bridges, December 7, 2022
11. List of Prior Inventions and Original Works of Authorship (none), Rayne Bridges,
    December 8, 2022
12. Employee Handbook and Acknowledgement, Rayne Bridges, December 6, 2022

COMPLAINT FOR DAMAGES