1  Cyrus Johnson CA SBN 225797
2  CYRUS JOHNSON ESQ.
   7300 SH 121 STE. 300
3  McKinney, Texas 75070
   Telephone: (972) 516-4322
4  Email: email@cyrusjohnson.com

5  Attorney for Plaintiff
6  National Specialty Pharmacy, LLC

7                    **UNITED STATES DISTRICT COURT**

8           **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

9

10 NATIONAL   SPECIALTY   PHARMACY,        Case No.:  5:23-CV-4357-SVK
   LLC
11                                         **FIRST AMENDED COMPLAINT**
12                    Plaintiff,
                                           **DEMAND FOR JURY TRIAL**
13 v.

14 SAMEER  PADHYE,  AN  INDIVIDUAL
   MAYBELLINE SANA, AN INDIVIDUAL,
15 RAYNE   BRIDGES,   AN   INDIVIDUAL,
   ABHINAY  PADHYE,  AN  INDIVIDUAL,
16 COLIGOMED   INC.,   A   DELAWARE
17 DOMESTIC   CORPORATION,   ENLIL,
   INC.,   A   DELAWARE   DOMESTIC
18 CORPORATION, BENJAMIN D. BROWN,
   AN   INDIVIDUAL,   and   Does  1  to  49,
19 inclusive,

20

21                    Defendants.

22

23         Plaintiff National Specialty Pharmacy, LLC ("NSP", "Company", or "Plaintiff") by and

24 through its undersigned attorney, for its First Amended Complaint against Sameer Padhye

25 ("Padhye"), Maybelline Sana ("Sana"), Rayne Bridges ("Bridges"), Abhinay Padhye ("A-Padhye"),

26 Coligomed, Inc. ("Coligomed"), Enlil, Inc. ("Enlil"), dba "Taycann Wellness" ("Taycann"),

27 Benjamin D. Brown ("Brown", AKA "Daniel Brown") and Does 1-49 (collectively, "Defendants"),

28 hereby demands a jury trial and alleges as follows:

## NATURE OF THE ACTION

1.      NSP is a leading compounding pharmacy incorporated in Delaware with operations in Nevada, California, and Tennessee. NSP hired the Defendants Padhye, Sana, Bridges, and Brown to manage and build its business. However, despite being bound by contract, relevant law, and regulation governing pharmacy businesses, and their fiduciary duties, instead Defendants joined in a conspiracy to damage, defraud, and deprive company through intentional and willful acts of fraud, unfair competition, and theft (including of Plaintiff's trade secrets).

2.      Defendants established new, direct, and competing business venture/s making use of NSP property, harming Plaintiff. NSP therefore brings this action to enjoin the Defendants' ongoing and further malfeasance, and to recover damages for the harms caused.

## THE PARTIES

2.      Plaintiff National Specialty Pharmacy, LLC, LLC is a Delaware Limited Liability company with its principal place of business in Las Vegas, Nevada. NSP also has operations and is registered to do business in California and Tennessee. The company is owned in majority interest by SSD Medventures, LLC, a Delaware limited liability company owned and managed by Sanjiv S. Dhawan ("Dhawan"), the CEO of both companies.

3.      Defendant Sameer Padhye is, on information and belief, an individual who resides permanently in Santa Clara County, California.

4.      Defendant Maybelline Sana (also known as Maybelline Ash) is, on information and belief, an individual who resides in Clark County, Nevada. On information and belief, Defendant Sana is now doing business under the assumed business name, "Taycann Wellness."

5.      Defendant Rayne Bridges is, on information and belief, an individual who may reside in Clark County, Nevada and/or San Bernadino County, California.

6.      Defendant Daniel Brown is, on information and belief, an individual who resides in Clark County, Nevada.

7.      Defendant Abhinay Padhye is, on information and belief, a citizen of India, who resides in Bengaluru, Karnataka, India. A Padhye, on information and belief, is the brother of Defendant Padhye.

8.      Defendant Coligomed, Inc. is, on information and belief, a Delaware corporation, with operations in Santa Clara, California. On information and belief Defendant Coligomed has a subsidiary company, Coligomed India Private Limited in India. On information and belief, Defendant A-Padhye owns and/or controls Coligomed. On information and belief, it is suspected that Defendant Padhye also owns and/or controls Coligomed and that Coligomed acted as a conduit and/or recipient of beneficiary of improperly obtained company proprietary property.

9.      Defendant Enlil, Inc. is, on information and belief, a Delaware corporation, with operations in Santa Clara County, California. On information and belief, Defendant Padhye established and owns and/or controls Enlil acted as a conduit and/or recipient of beneficiary of improperly obtained company proprietary property.

10.     On information and belief, Does 1-49 are now, and at all times relevant to this Complaint were, individuals or entities who were employees and/or agents of the other Defendants and/or otherwise participants in in Defendants' acts of disruption, trade secret misappropriation and fraud and unfair business practices.

11.     Plaintiff is informed and believes that other third-party companies, and other persons, presently unknown, formed a part of the conspiracy to defraud, damage, and deprive Plaintiff, and actively participated and/or supported same, damaging Plaintiff for their improper benefit.

12.     The true names or capacities, whether individual, corporate, associate or otherwise, of Defendants Doe One to Doe Forty-Nine, inclusive, are unknown to Plaintiff who therefore sues said Defendants by such fictitious names. Plaintiff will amend his complaint by inserting the true

names or capacities, with appropriate charging allegations, when the same is ascertained. Plaintiff is informed and believes and based thereon allege that each of the Defendants named herein as a Doe is negligently or in some other manner responsible for the events and happenings herein referred to and were a cause of the injury and damages to Plaintiff alleged herein.

13.     Plaintiff is informed and believes and based thereon alleges that, at all times mentioned herein, Defendants, and each of them, was the agent, servant, employee, or joint venturer of his co-Defendants, and that, in doing the acts herein alleged, were acting within the scope, course and authority of said agency, employment, or joint venture.

14.     On information and belief that Defendants also acted singly and individually in damaging Plaintiff for the improper benefit of each.

15.     Plaintiff is informed and believes and based thereon alleges that, at all times mentioned herein, that Defendant Sameer Padhye, was the leader, primary leader, or one leader, of the conspiracy alleged herein, directing, and coordinating the behavior of fellow Defendants to defraud, damage, and deprive Plaintiff, and in the alternative is singly and individually responsible for the conduct alleged herein.

**JURISDICTION AND VENUE**

16.     This Court has original jurisdiction over the subject matter of this action pursuant to 18 U.S.C. § 1836(c), 28 U.S.C. § 1331, and 28 U.S.C. § 1332. This Court has supplemental jurisdiction over the other claims asserted herein pursuant to 28 U.S.C. § 1367.

17.     Venue is proper in this District under 28 U.S.C. § 1391(b)-(d) because a substantial portion of the events or omissions giving rise to the claims herein occurred in this District, Defendant corporations have the most significant contacts with this District, and Defendants Padhye, Sana,

Bridges, and Brown contractually agreed in their respective employment agreements that venue is proper in this District.

## INTRADISTRICT ASSIGNMENT

18.     Pursuant to Civil L.R. 3-2(c), and General Order No. 44, this action arises in the county of Santa Clara, and should be assigned to the San Jose Division.

## GENERAL ALLEGATIONS

### NATIONAL SPECIALTY PHARMACY, LLC PRODUCES AND DELIVERS LIFE SAVING PHARMACEUTICAL PRODUCTS NATIONWIDE THROUGH PROPRIETARY METHODS, MANNERS, AND MEANS WHICH IT PROTECTS

19.     National Specialty Pharmacy, LLC, a Delaware company qualified to do business in California, and with its main facility in Las Vegas, Nevada, is a compounding pharmacy providing various life-saving drugs to patients nationwide. Plaintiff's gross revenue is estimated to be $12M per year.

20.     Plaintiff's development, compounding, marketing, and distribution of important medical products (including under government contract) poses unique business requirements and challenges. Due to the many regulations and laws governing operations, and for reasons of medical efficacy and competitive advantage, product formulations are technically precise and confidential. Information about Plaintiff customers, client companies, sellers, suppliers, marketing, distributions and distributors also embody critical, unique, proprietary, and private information and data (methods, knowledge, and relationships) invested in and also secured over time. These multi-faceted assets are key ingredients for the present and future success of Plaintiff business.

21.     NSP's various methods and methodologies in the production, sale, and distribution of its products are the result of over ten years of operational experience and investment comprising thousands of hours of process work and refinement, and millions of dollars in investment to develop and also to secure. These unique business methods and methodologies contain embodied unique and

FIRST AMENDED COMPLAINT

proprietary data, processes, content, and information ("trade secrets") core to the success and functioning of business.

22. NSP has invested between $15 and $20 million over the life of the company to realize success, and including for the securing of its proprietary content.

23. NSP is a success in its market, and several sub-markets, and the potential for future growth and competitive advantage being realized year over ear is vast, and for years has been an ongoing documented reality. NSP's work and possession of intellectual property are cumulative in nature. Each successful opportunity has and does make possible the next opportunity in product, or market.

24. Because NSP is doing important work for public health, and is a highly regulated business, it ensures that its security and information security processes and procedures comply with its industry's exacting security requirements, and NSP has spent substantial monies to do so. These include technical encryption methods, password protection methods, company policies, employee training, company physical security measures, employee training, outside legal reviews, third party providers and experts, hardware, software, and legal agreements binding employees and others. NSP has spent and spends a large amount of money and effort to secure its trade secrets.

25. The confidentiality of company processes and methods regarding its intellectual assets (products, markets, customers, and more) is critical and intrinsic to their value, and to the overall value, stability, and ongoing success of the company. The specifics processes and methods are not known to the general public. They not known even to competitors in the same or in similar markets. If competitors were to come to learn these, or receive any information or data, information, or expertise about same, they could replicate these processes and methods directly harming NSP by capturing customers or market share or competitive advantages belonging solely to NSP in its unique value proposition. Maintaining confidentiality of NSP's trade secrets is thus critical to NSP's unique value proposition and business, and its employees and others who may have access to same are

instructed by company policy, and restricted by training and instruction, and bound by multiple redundant formal agreement/s to abide these strict technical, physical, and legal strictures.

26.     NSP requires all of its employees or contractors to agree to these stringent requirements with regard to company information and data. NSP requires them to follow company training, instruction, and processes. It requires them, as the law additionally provides, to keep company information confidential during and following their departure. These requirements are articulated in various agreements that employees, and the employee-Defendants, were required to agree to as an express condition of employment. [**Exhibit A**, appended hereto]

### NSP HIRES DEFENDANTS PADHYE, SANA, BRIDGES, AND BROWN

27.     On or around September 2022, Defendant Padhye made a presentation and representations to the Company CEO to the effect that, utilizing his unique skills and special business traits and methods, that he could grow revenue of Company [specifically stating he could (and would) "increase the number of customers by 10,000"] through his represented specialized knowledge and work in a leadership role with NSP. On information and belief, the truth was otherwise, and this was a misrepresentation. In reality, despite work in (non-pharmaceutical) technology, and in contrast to the representations made, Defendant Padhye had never worked for a pharmacy company before, and lacked the experience and skill represented to Plaintiff, and on information and belief also had other undisclosed plans.

28.     Plaintiff agreed, relying upon the untrue representations and promises made, to hire Defendant Padhye.

29.     On October 11, 2022, Plaintiff NSP hired Defendant Padhye with the title of "Chief Strategy Officer" for NSP with specific responsibility for, and the expectation of, increasing company revenue, per the previous discussions. Padhye was an at-will employee. Less than nine months later, on June 22, 2023, Padhye voluntarily resigned his position with NSP. [**Exhibit A**,

FIRST AMENDED COMPLAINT

appended hereto.] He neither generated "10,000" new customers, and on information and belief, likely lost the Company customers.

30.     Previously, on May 21, 2018, Plaintiff NSP had hired Defendant Sana as a pharmacy technician. Later, Defendant Sana was promoted to the role of "Director of Operations and Human Resources" during the same space of time as Defendant Padhye was hired and under the same Company plans. Sana likewise was an at-will employee. Sana was assigned to work closely with Defendant Padhye on company operations and growth. Soon after Padhye's resignation, on July 5, 2023, Sana submitted a letter of resignation with an effective date of Monday, July 31, 2023. [**Exhibit A**, appended hereto.] Defendant Sana departed earlier on July 14, 2023.

31.     On December 6, 2022, NSP hired Defendant Rayne Bridges ("Bridges") as a "Lead Sales Account Executive" in order to also boost sales. Bridges was an at-will employee. One week after Padhye's termination on June 28, 2023, Bridges submitted a letter of resignation giving an effective date of July 14, 2023. [**Exhibit A**, appended hereto.] Bridges had previously resigned once before, in June, but retracted the resignation before resigning finally a second time. On information and belief this was done to afford co-conspirator Bridges to improperly collect Company data following departure of fellow Defendant Padhye.

32.     On January 11, 2023, NSP hired Defendant Benjamin D. Brown (AKA "Daniel Brown") as "Marketing and Content Manager" in order to boost sales through its web assets. Brown was an at-will employee. His responsibilities included website maintenance, content creation and deployment, and technology services relating to NSP's public communications. On August 28, 2023, Brown texted employee (and HR Manager) Jaime Stevens, "Effective immediately, I am no longer employed with National Specialty Pharmacy…" In the text he also provided statements about his working files. [**Exhibit B**, appended hereto]

33.     Each of the four employee-Defendants executed a "Confidential Information and Invention Assignment Agreement," "Conflict of Interest Guidelines," and an acknowledgement of receiving and reviewing NSP's "Employee Handbook" which contained additional detailed requirements about company information and employee behavior relating to company trade secrets and other private information. [**Exhibit A**, appended hereto.]

<u>DEFENDANTS PADHYE, SANA, BRIDGES, AND BROWN DEFRAUD, DAMAGE, AND DEPRIVE IN A CONSPIRACY AMONG THE DEFENDANTS</u>

34.     On information and belief, beginning in and around November 2022 and continuing to the present, with possible pre-planning and in violation of their employment agreements and applicable law and regulations, the Defendants acted in concert in a coordinated plan to negligently, knowingly, and also intentionally defraud, damage, and deprive Plaintiff NSP in a variety of ways, settings, and for a variety of commercial purposes for their own benefit, injuring and causing damage to Plaintiff.

35.     Among other actions, on information and belief the Defendants worked together: (a) to convert NSP funds and other company property to their own uses, (b) to appropriate business advantages and opportunities belonging to Plaintiff NSP to themselves, (c) to breach the terms of their agreements with company in material respects, (d) to transmit to themselves and others company confidential and proprietary information for suspected but not yet proven reasons during employment and *after employment*, (e) to appropriate company funds, intellectual property, and other property to themselves, and (f) to mislead company in material respects, and (g) to intentionally and/or recklessly and variously cause intentional disorder, division, and disruption (damage) to Company operations by various means, (including technological and company systems interruptions and disruptions) in order to hurt company for self-interested reasons.

36.     On information and belief, the Defendants caused intentional disruption and damage within company, acting with the collaboration, inducement, involvement, and/or to or for the benefit

of competitors and competing businesses (Defendants Enlil, Coligomed, and Does), damaging company for their own improper benefit.

37.     Specifically, on information and belief, on or around November 2022, and thereafter, Defendant Sana, working in concert with the other Defendants and individually, willfully, and maliciously and deliberately disclosed and shared confidential and proprietary Company and Third-Party information, namely payroll records and payroll amounts of employees, to third parties, employees. For instance, Sana told one employee that she was the lowest paid in the Company, revealed the salary of another, and also disclosed private proprietary net worth information about Company owner. The effect of the intentional disclosures was predictable damage by disruption to corporate operations and teams, and increased Company cost due to new revenue outlays for employee retention precipitated by the breach.

38.     On information and belief, on or around July 11, 2023, Defendant Sana, working in concert with the other Defendants and individually to damage Company, willfully, and maliciously and deliberately uttered, spread, and repeated a series of false statements to co-workers -- specifically that company founder and CEO Dhawan had said about a senior employee, and his wife, that he, "Wished [they] would just die." The statement was untrue. The outrageous rumor caused predictable emotional distress and disorder to the team.

39.     On information and belief, on or around February-August 2023, Defendants, working in concert and individually, made fraudulent accounting and payroll entries not authorized by Company, including: (a) the unilateral changing of the compensation to be paid to an employee by Defendant Padhye, (b) the addition of contrived "vacation pay" supposedly owed to one of the Defendants by Defendant Sana to benefit Defendant Padhye, who had already expended his vacation time, (c) unapproved "adjustments" to payroll records made by Defendant Bridges, and (c) the submission of dubious cost reimbursements by Company by Defendants, among others.

40.     On information and belief, on or around February 2023, Defendant Sana, working in concert with the other Defendants and individually, willfully, and maliciously and deliberately

uttered more false statements (untrue rumor) to co-workers, specifically to a Company operations leader, that "Sameer was brought in by Mr. Dhawan to prevent you from stealing." The statement was untrue and made up by Sana. More chaos and time expense (damage) followed.

41.     On information and belief, on or around February 2023, Defendant Padhye, working in concert with the other Defendants and individually, caused Plaintiff to unnecessarily spend the sum of nearly $50,000 of company funds on a software program or proposed programs to be provided by Defendant A-Padhye, *Defendant Padhye's brother*. The software was never authorized by Company, nor delivered in a usable format, and from which transaction. Defendant Padhye received personal benefits. Defendants did not disclose that the software was intended to be a direct competitor of Plaintiff.

42.     On information and belief, on the account of multiple Company personnel, Defendant Padhye's conduct in the workplace was typically unclear, bullying, and abusive, and grossly counter-effective and seemingly at times intentionally destructive to Company operations, personnel morale, team cohesion, and operational and financial performance.

43.     In one example of Defendant Padhye's seemingly intentional destructive behavior, on or around May 18, 2023, upon a gay employee expressing emotion at a particularly stressful circumstance, Defendant Padhye angrily remonstrated employee, stating words to the effect, "Do not cry. You are a man. Men do not cry." Padhye shocking statements and conduct precipitated ongoing reparative corporate meetings and countermeasures at additional cost and distress to Company operations.

4.     In or around November 2022, one employee, citing the "bad vibes" of Defendant Padhye immediately after his presentation, promptly left the job, instantly, on the same day.

45.     On information and belief, on or around November 2022, Defendant Padhye proposed, and promoted to Company personnel the illegal idea to provide tangible inducements to

FIRST AMENDED COMPLAINT

prospective customers in order to secure customer business, suggesting they be given improper inducements ("iPhones").

46.     On information and belief, on or around February 2023, Defendant Padhye, working in concert with the other Defendants and individually, in violation of the law and relevant regulations, attempted to instruct the work of licensed personnel, including Company pharmacists and technicians, and the Company's Pharmacist in Charge (PIC), in the filling of prescriptions, a direct violation of law.

47.     Despite holding fiduciary management roles with company, Defendants Padhye and Sana frequently coordinated their activities in secret together; holding private closed-door and off-site meetings frequently while other essential team members were excluded, traveling together to and from events, and delivering the messages of each other – further unnerving and alienating Company employees and disrupting and damaging company.

48.     Company marketing web assets (website systems) were improperly maintained by Defendant Brown (the sole employee responsible therefor), and, on information and belief, were deliberately modified in a manner to render them purposefully substandard and damaging to Plaintiff. Defendant Brown caused the SSL (security) certificate of Plaintiff's company website to be removed or rendered inactive, thereby creating a security risk to company assets. Plaintiff's company website also suffered from numerous bugs and search ranking issues, which were discovered upon Brown's departure and required time and expense from Plaintiff to remediate. Soon before his sudden departure from the company (via text message), on or around August 10, 2023, Brown contacted NSP's CEO to indicate he had been contacted by Defendant Sana to do work for her project "Taycann Wellness." Brown elicited several statements from NSP's CEO, and subsequently, on information and belief, elected to provide services for Defendant Sana and "Taycann Wellness" in violation of the terms of his employment agreement with Plaintiff.

<u>POST-EMPLOYMENT BEHAVIOR BY DEFENDANTS PADHYE, SANA, BRIDGES, AND BROWN</u>

49.     Following the Defendants' respective separations from Company (June 22, 2023 (Padhye); July 5, 2023 (Sana); and July 14, 2023 (Bridges)), on information and belief, each and all of the Defendants willfully, maliciously, and in direct violation of the law and their former employee agreement's extant provisions, improperly and illegally *electronically accessed company systems and data.* During a technical review performed on August 5, 2023, it was discovered that multiple post- and pre-termination improper accesses had been made.

50.     Despite remaining with company, and having responsibility for technology tools maintenance, and on information and belief with the awareness of the acts of the other Defendants, Defendant Brown remained silent about these intrusions, misleading Plaintiff. For example, after termination of Padhye, Sana, and Bridges (on information and belief) it was discovered that Defendant Padhye had made himself sole administrator on the company's project management system ("Monday.com") and simultaneously deleted the other users and administrators, which effectively locked the company out of its own system.

51.     On information and belief, as *non-employees* and *subject to ongoing confidentiality strictures they had agreed to themselves,* the Defendants accessed Company systems and intellectual property from sites located in San Jose, California; Burlingame, California; and Las Vegas, Nevada.

52.     On information and belief, at least one Defendant, namely Bridges, has been engaging in a pattern of intentional disparagement through the uttering of false information, statements, and rumors about Company to working partners and possibly clients. Specifically, *after her employment*, Defendant Bridges told at least one client company in Tennessee that company was no longer legally entitled and was no longer doing business in a category known as "white label" business (an untrue statement). Additionally, in a private moment away from others, in or around July 2023, Defendant Bridges propositioned a client company employee to leave their position and come to work for her employ in violation of her non-competition agreement. Such statements and behavior are inherently

harmful/destructive to Plaintiff, presumed to be harmful, and are the cause of ongoing harm and damage to Company. Additionally, in or around September 4, 2023, Plaintiff learned Defendant Bridges was offering goods and services (durable medical equipment) directly competing with her former employer. [On information and belief, during the courts of employment Defendant Padhye had previously instructed Defendant Bridges, in his then supervisory capacity, to *not* spend time on durable medical equipment.]

53.     Defendant Brown abruptly left his position on August 28, 2023, and Plaintiff discovered improper maintenance and seemingly intentional damage to its web assets. Defendant Brown misrepresented at his sudden departure the conditions and requirements of Plaintiff's systems.

54.     The net effects of the alleged conduct by the Defendants over ten short months (and continuing until August, 2023, *post*-employment) included: grave dangers of compromise to Company data and systems; a loss of personnel, operational efficiency, and injuries to team morale; real losses of revenue from Company expenditures and business losses; employee distrust of management hampering productivity and operations of Company, increased costs, unnecessary expenditures, and extensive financial, market standing, good will, competitive advantage, and other property losses.

<u>DEFENDANTS CONSPIRE TO ABUSE POSITIONS OF EMPLOYMENT, TRUST, CONTRACT WITH NSP TO IMPROPERLY EXPLOIT NSP'S PROPRIETARY INFORMATION FOR ILLEGAL COMPETITIVE ENDS</u>

55.     During these times and events, two related businesses were active, if in the background. Defendant Enlil, on information and belief, formed and owned and/or operated by Defendant Padhye is a Campbell, California company calling itself a "one-stop-shop [for] Medtech teams." Defendant Coligomed, on information and belief, is a San Jose company which is owned and/or operated by Defendant A-Padhye (and possibly Defendant Padhye) is "a stealth mode digital health platform startup." The latter company has a web program and an app which is listed available on the Apple App Store. Each/both companies would be direct market competitors of company. Defendant Padhye misrepresented his involvement with each.

56.     On information and belief, Defendants Padhye, Sana, and Bridges have been working together in a conspiracy (and also individually) with the above company Defendants and Defendant A-Padhye over time to "data mine" (take select sensitive private information and trade secrets) belonging to Company.

57.     On information and belief, Defendant Sana is also operating under the trade name "Taycann Wellness," in concert with the other Defendants, to build a competing company to NSP, in violation of law and her agreement with Company.

58.     On information and belief, after departing NSP, Defendant Sana contacted and solicited *current* personnel of NSP, inviting them to do marketing work for her new undertaking. That person, Defendant Brown, it has been learned by Plaintiff, had actually been fraudulently working with Defendant Sana on undisclosed non-company initiatives during the pendency of the conspiracy, while fraudulently misleading company and its CEO with materially false representations and ruses.

59.     On information and belief Defendants have been and intend to directly compete with NSP, making use of NSP's trade secrets and other intellectual property.

60.     On information and belief, Defendants converted the trade secrets of NSP, engaged in fraud in their employments and contractual arrangements and fiduciary roles to damage company and unjustly enrich themselves.

61.     On information and belief, Defendants' conduct includes the intentional taking of the property, monies, intellectual property, trade secrets, and business assets, strategies, market advantages, methods and formulas and technologies of Plaintiff between October 2022 to the present.

62.     On information and belief, various methods of taking were involved including, without limitation, false promises, intentional misrepresentations, artifice, concealments, intentional breaches of contract obligations and implied covenants, tortious interferences with business and related business parties and agreements, and also by improper competitive methods: intentional

disruption of company and technology systems, misappropriation of content, disparagement, business and trade libel, and outright conversion, and conspiracy to convert, leading to damage to company.

63.     On information and belief, at all times mentioned herein, Defendants, were joint members of an overall coordinated plan to conspire and collude together toward a corrupt, illegal, and fraudulent end (the "conspiracy") to damage company and improperly benefit themselves thereby which caused injuries and damage to the legal rights, business advantages, properties, intellectual properties, trade secrets, and reputation and standing of Plaintiff.

**FIRST CAUSE OF ACTION**

FRAUD – INTENTIONAL MISREPRESENTATION (CIV. CODE, §§ 1572-1573); FRAUD – FRAUDULENT CONCEALMENT (CIV. CODE, § 1710(1), (3)); FRAUD – PROMISSORY FRAUD

(By National Specialty Pharmacy, LLC against Defendants Padhye, Sana, Bridges, and Brown)

64.     Plaintiff incorporates every allegation contained in the preceding paragraphs, as though set forth fully herein.

65.      Defendants Padhye, Sana, Bridges, and Brown, in their roles as employees of NSP, committed actual and constructive fraud, as a party to a contract, and by connivance, with intent to deceive Company and its representatives, to induce behavior in contract, and to induce the making of a contract.

66.     Each and all represented to and promised Company and its owners and managers that each would be doing the tasks of their employment as represented by them without the intent to do so.

67.     Instead, each and/or all used Company time and resources toward their own purposes, plans, ends, and corrupt motives. After making representations untrue that they knew to be untrue, Defendants engaged in serial acts intended to deceive and/or suppressing what was true for corrupt ends.

68.       Defendant Padhye represented himself to be competent and capable of growing business in a pharmaceutical company when in fact he had no such skill, knew he had no such skill, concealed his lack of skill, and in fact failed at generating any new business at all, while instead causing major disruption. As further insult to these injuries, for his promises, Padhye demanded and received the highest compensation within the Company.

69.       Defendant Brown posed daily as a loyal employee, concealing his improper alignment, work, and participation in furthering the Conspiracy with the other Defendants.

70.       By misleading words and other conduct, as acts and omissions of fact and action, to the prejudice of Company, and those employed by Company, each Defendant breached its legal duties harming Plaintiff.

71.       Plaintiff incorporates every allegation contained in the preceding paragraphs, as though set forth fully herein.

72.       Defendants suggested to the Plaintiff, and to others, facts that were untrue, that they knew were untrue, through statements made: about professional skills and capacities, likelihood of success of work initiatives, salaries earned, vacation time taken, compensation owed, confidentiality duties adhered to, and more.

73.       Likely to mislead, Defendants suppressed facts and/or colored fact presentations about their responsibilities, roles, loyalty, legal status, and performance with Company in ways calculated to mislead.

74.       Defendant Bridges intentionally misrepresented the licensing, business, and contracting status of NSP, intentionally misrepresented her role with NSP, and, under the guise of

FIRST AMENDED COMPLAINT

speaking for NSP, fraudulent attempted to "recruit" from a direct competitor to NSP an employee or agent to her new enterprise – another competitor to NSP.

75.     Without an intent to fully perform according to their agreements with Company, Defendants promised contra wise, to fulfill the employment, management, and fiduciary duties of their positions.

## SECOND CAUSE OF ACTION

### BREACH OF CONTRACT

(By National Specialty Pharmacy, LLC against Defendants Padhye, Sana, Bridges, and Brown)

76.     Plaintiff incorporates every allegation contained in the preceding paragraphs, as though set forth fully herein.

77.     The "At-Will Employment, Confidential and Invention Assignment Agreement", appended at **Exhibit A** hereto, to which Plaintiff faithfully adhered, includes the following (and other) terms which Plaintiff alleges were violated by the Defendants:

(a) "I agree that during and after my employment with the Company, I will hold in the strictest confidence, and take all reasonable precautions to prevent any unauthorized use or disclosure of Company Confidential Information" (Sec 3, subsection B)

(b) "Third Party Information" is to be similarly treated as Confidential Information. (Sec 3, subsection D)

(c) Activity which conflicts with obligations to Company is prohibited.

78.     Plaintiff alleges the Defendants, each singly, and all in concert, violated various terms of their contract with Company in disclosing company trade secrets during and after employment, by mishandling trade secrets, and by undertaking activity conflicting with their obligations to Company, to wit, by self-dealing statements, behaviors, and actions outside of the scope and duties of their respective contractual obligations resulting in varied, wide-spread, and extensive damages to Plaintiff.

**THIRD CAUSE OF ACTION**

TORTIOUS INTERFERENCE

(By National Specialty Pharmacy, LLC against all Defendants)

79.     Plaintiff incorporates every allegation contained in the preceding paragraphs, as though set forth fully herein.

80.     Defendants did intentionally, and/or with foreknowledge of Company contracts, competitors, operational plans, unique risks, and challenges take action to intentionally and knowingly interfere with Company operations, economic advantages, and contractual advantages resulting in damage to Company.

81.     Defendant action included breaches of Company trade secrets, and of other proprietary information of Company, revealing protected information, and revealing information critical to Company's competitive advantages and contractual arrangements.

**FOURTH CAUSE OF ACTION**

CONVERSION

(By National Specialty Pharmacy, LLC against all Defendants)

82.     Plaintiff incorporates every allegation contained in the preceding paragraphs, as though set forth fully herein.

83.     Company owned and had the right to own and possess Confidential Information, trade secrets, third-party information, and other proprietary information and other monies and property that Defendants wrongfully interfered with by wrongful appropriation of same and its re-conveyance.

84.     Company did not consent to such appropriation, and in that it involved previously private informational property, its appropriate wrought harm to Plaintiff of which Defendant's conduct was a substantial factor.

## FIFTH CAUSE OF ACTION

CONSPIRACY TO CONVERT (CIVIL CONSPIRACY TO VIOLATE PEN. CODE, § 493, 502(C))

(By National Specialty Pharmacy, LLC against all Defendants)

85.     Plaintiff incorporates every allegation contained in the preceding paragraphs, as though set forth fully herein.

86.     With full awareness among and in each of Defendants, Defendants did wrongfully conspire to appropriate, take, or otherwise convert property of Plaintiff (monetary, intellectual, and otherwise) in violation of Penal Code § 493, and 502(c). Fellow Defendants knew, agreed, and intended that the wrongful action be taken by and with the others.

## SIXTH CAUSE OF ACTION

MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836)

(By National Specialty Pharmacy, LLC against all Defendants)

87.     Plaintiff incorporates every allegation contained in the preceding paragraphs, as though set forth fully herein.

88.     Plaintiff was the owner and rightful possessor of various trade secrets including, without limitation: vendor and partner information, proprietary formulas, business processes, pricing strategies, pricing data, marketing methods, other data, computer and software processes and systems for a unique segment of the pharmaceutical industry, and more and that these were unique trade secrets of the Company.

89.     Plaintiff has taken reasonable measures to safeguard the security and privacy of same including technical and IT means such as encryption and password protections, legal protections,

contractual agreements, Company training, Company manual review and certification by all employees, physical infrastructure controls, and other methods.

90.     Defendants, acting in concert and individually, improperly acquired, used, and disclosed the trade secrets, unjustly enriching Defendants, and directly and proximately causing damage to Plaintiff, and that such acquisition, use, and disclosure were a substantial factor in Plaintiff's harm.

91.     NSP has sustained actual losses from Defendants' misappropriation of NSP's trade secrets, and Defendants have been unjustly enriched by their misappropriation. 91. If Defendants' misconduct is not stopped, NSP will continue to suffer significant damages and irreparable injury for which there is no adequate remedy at law.

92.     Because NSP's remedy at law is inadequate, NSP seeks temporary, preliminary, and permanent injunctive relief, in addition to damages, to protect its trade secrets. On information and belief, if Defendants are not enjoined, they will continue to misappropriate NSP's trade secrets for their own benefit and to NSP's detriment and will disseminate those trade secrets to current or prospective customers, partners, investors or other third parties.

93.     On information and belief, Defendants' misappropriation of NSP's trade secrets were willful, fraudulent, and malicious, and done with an intent to injure and oppress NSP.

## SEVENTH CAUSE OF ACTION

### UNFAIR BUSINESS PRACTICES (BUS. & PROF. CODE §§ 17200 ET SEQ.)

(By National Specialty Pharmacy, LLC against all Defendants)

94.     Plaintiff incorporates every allegation contained in the preceding paragraphs, as though set forth fully herein.

95.    Defendants, acting in concert and individually, engaged in behavior which was unlawful, unfair, and fraudulent to the Company and the rights of Plaintiff. Such behavior was also deceptive, untrue, and misleading; including that behavior detailed in Bus. & Prof. Code § 17500.

**EIGHTH CAUSE OF ACTION**

BUSINESS DISPARAGEMENT, TRADE LIBEL

(By National Specialty Pharmacy, LLC against Defendant Bridges)

96.    Plaintiff incorporates every allegation contained in the preceding paragraphs, as though set forth fully herein.

97.    Defendant Bridges committed disparagement and commercial libel against Plaintiff Company by uttering knowingly untrue statements causing Plaintiff damage to its reputation, business standing and business. Defendant Bridges knowingly, and with reckless disregard for truth, told a non-Plantiff third party that Company was not qualified to do business in Tennessee for "white label" products, and was no longer doing so. Defendant Bridges knew the statement was untrue and would cause harm to Plaintiff reputation, because others were likely to rely upon it, and it did cause of direct financial harm (lost business and leads) as a result of statement. It is unknown in detail at this time, but on information and belief is suspected and is alleged, that fellow Defendants, given a joint conspiracy, have also likewise disparaged Plaintiff and/or participated with Defendant Bridges in a common scheme or plan to disparage Plaintiff.

98.    Such statement was known to be false and damaging to Plaintiff by Defendant, or was at least made with reckless disregard to its truth or falsity, and resulted in damage to Plaintiff.

99.    Defendant Bridges, and other Defendants should additionally be immediately enjoined by the court from any further utterances.

FIRST AMENDED COMPLAINT

## **PRAYER FOR RELIEF**

100.    At said times, places, and ways alleged herein, Defendants, and each of them, and together acting in concert, committed willful, malicious, negligent, and also intentionally acts against the rights of Plaintiff NSP, inflicting damages grave, certain, and not yet fully investigated/calculated.

106.    As a legal result of the actions of Defendants, and each of them, and acting in concert, Plaintiff National Specialty Pharmacy, LLC has been substantially economically damaged and injured. Plaintiff is informed and believes and based thereon alleges that said damage and injury is current, ongoing, and expected to continue without judicial intervention.

107.    As a further legal result of the Defendants' actions alleged in this matter, and each of them, and acting in concert as aforesaid, Plaintiff, is required to take investigative and diagnostic steps with regard to its Company computer and network systems, personnel conduct and policies, software diagnostics and security, and efforts to ascertain where and to whom or what companies or competitors the purloined data and information may have been re-transmitted, and addressing same. The exact amount of these additional expenses is presently unknown, and Plaintiff prays leave to amend its complaint to allege the exact amount when the same is ascertained.

 WHEREFORE, Plaintiff pray for judgment as hereinafter set forth:

1.   For temporary, preliminary, and permanent injunctive relief against Defendants requiring them and all those acting in concert with them to return NSP's trade secrets and confidential information and prohibiting Defendants and all those acting in concert with them from continuing their misappropriation of NSP's trade secrets and misuse of NSP's confidential information;

2.   General damages according to proof, specific damages, compensatory damages, incidental damages, and consequential damages according to proof at trial;

3.   Punitive damages by statute, and in the court's discretion;

FIRST AMENDED COMPLAINT

1

2      4.   Plaintiff's attorneys' fees and all other legal costs;

3      5.   Any interest accrued;

4      6.   Such other relief as the court shall deem proper in this case.

5
Dated:  September 15, 20230              CYRUS JOHNSON, ESQ

6
                                        By:   */s/ Cyrus Johnson*

7                                             Cyrus Johnson (CA 225797)
                                              email@cyrusjohnson.com

8
                                              Attorney for Plaintiff

9                                             National Specialty Pharmacy, LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT

**EXHIBIT A**

DEFENDANT AGREEMENTS
[APPENDED]

1. NSP Letter confirming termination by Maybelline Sana, Sameer Padhye, July 5, 2023
2. Conflict of Interest Certification, Sameer Padhye, October 11, 2022
3. At-Will Employment, Confidential Information, and Invention Assignment Agreement, Sameer Padhye, October 11, 2022
4. List of Prior Inventions and Original Works of Authorship (none), Sameer Padhye Bridges, October 11, 2022
5. Employee Handbook and Acknowledgement, Sameer Padhye, October 11, 2022

6. Resignation letter, Maybelline Ash, July 5, 2023
7. Conflict of Interest Certification, Maybelline Ash, May 21, 2018
8. At-Will Employment, Confidential Information, and Invention Assignment Agreement, Maybelline Ash, December 7, 2022
9. List of Prior Inventions and Original Works of Authorship (none), Maybelline Ash, December 8, 2022
10. Employee Handbook and Acknowledgement, Maybelline Ash, May 21, 2018

11. Resignation letter, Rayne Bridges, June 28, 2023
    Conflict of Interest Certification, Rayne Bridges, December 6, 2022
12. At-Will Employment, Confidential Information, and Invention Assignment Agreement, Rayne Bridges, December 7, 2022
13. List of Prior Inventions and Original Works of Authorship (none), Rayne Bridges, December 8, 2022
14. Employee Handbook and Acknowledgement, Rayne Bridges, December 6, 2022

15. Offer Letter, for employment, January 11, 2023
16. Conflict of Interest Certification, Benjamin D. Brown, January 30, 2023
17. At-Will Employment, Confidential Information, and Invention Assignment Agreement, Benjamin D. Brown, January 18, 2023
18. Employee Handbook and Acknowledgement, Benjamin D. Brown, January 18, 2023

FIRST AMENDED COMPLAINT

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Local Rule 3-6, Plaintiff National Specialty Pharmacy, LLC hereby demands a trial by jury on all issues raised by the Complaint.

Dated:  September 15, 2023                    CYRUS JOHNSON, ESQ

                                               By:   */s/ Cyrus Johnson*
                                                     Cyrus Johnson (CA 225797)
                                                     email@cyrusjohnson.com

                                                     Attorney for Plaintiff
                                                     National Specialty Pharmacy, LLC

FIRST AMENDED COMPLAINT