UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL SPECIALTY PHARMACY, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SAMEER PADHYE, et al.,<br><br>Defendants. | Case No. 23-cv-04357-PCP   (SVK)<br><br>**ORDER RE DISCOVERY DISPUTES**<br>Re: Dkt. Nos. 106-07 |

Before the Court are two discovery disputes. *See* Dkts. 106-07 (the "Joint Statements"). In a remarkable demonstration of inefficiency inflicted upon the Court by the Parties, each of the Joint Statements arises out of the same issue: the sufficiency of Plaintiff's identification of trade secrets. Accordingly, the Court first addresses this primary issue and then turns to the lesser attendant issues raised by the Parties in its conclusion below. The issues raised in both Joint Statements may be resolved without oral argument. *See* Civil Local Rule 7-1(b).

## I.  INTRODUCTION

The Joint Statements concern Plaintiff National Specialty Pharmacy, LLC ("NSP") and just one of the two individual defendants, Defendant Sameer Padhye.[1] In Dkt. 106, NSP complains that Defendant Padhye refuses to respond to discovery requests or sit for a deposition because he objects to NSP's description of trade secrets. Defendant Padhye acknowledges his objection but proffers that if the Court finds the description to be sufficient, then NSP should be ordered to respond to his discovery requests as well. *See* Dkt. 106 at 9. In Dkt. 107, Defendant Padhye complains that NSP refuses to respond to his discovery requests without a protective order

---

[1] The remaining individual defendant is self-represented litigant Benjamin Brown.

in place—a protective order to which Defendant Padhye has no objection. NSP objects to responding to Defendant Padhye's discovery requests until Defendant Padhye agrees to respond to NSP's requests. *See* Dkt. 107 at ECF Pages 4, 9.

## II. SUFFICIENCY OF NSP'S TRADE-SECRET DESCRIPTION FOR PURPOSES OF CONDUCTING DISCOVERY

On November 4, 2024, following the exchange of discovery requests and objections, NSP served an amended interrogatory response setting forth its latest description of the allegedly misappropriated trade secrets. *See* Dkt. 106-1 ("Exhibit 1").[2] Defendant Padhye continues to object to the sufficiency of NSP's description, leading to the filing of the Joint Statement at Dkt. 106. NSP's description of trade secrets set forth in its amended discovery response largely tracks the description in the Second Amended Complaint, which Defendant Padhye has answered. *See* Dkts. 83 ¶¶ 38-46, 89 ¶¶ 38-46. The Court finds that the description of the trade secrets has improved through the amended pleadings and discovery, and, while continuing to lack detailed specificity such as file names and dates that may be required to succeed at trial, is satisfactory for purposes of conducting discovery, except as noted below.

Exhibit 1 lists nine alleged trade secrets[3]:

1. Data stored on NSP's CRM Monday.com, including the identity and contact information of NSP's current patients and health care provider (physician, home health agency, or other provider), whether the provider worked with White Card program patients, number of referrals the provider has made to NSP, number of patients per provider; and how NSP prioritizes current provider for further outreach; NSP's list of target health care providers in California, New Mexico, and Tennessee for future business development; pricing, budget, and ordering history for NSP's marketing materials; marketing event pricing, budget, attendee information, and profitability based on new leads and patients per

---

[2] Neither Party has moved to file the Joint Statements under seal, and the Court does not perceive grounds for filing this Order under seal.

[3] Exhibit 1 does not number the trade secrets. The Court has numbered them for convenience.

2

marketing event; NSP's master patient list, including name, contact information, date of last prescription, insurance information, and number of prescriptions per year.

2. Data stored on NSP's patient-provider database, including, patient name and associated contact information, healthcare provider information, insurance information, indication / condition / diagnosis, prescriptions and durable medical equipment, pricing strategy, purchase / cost / profit history, and dates, all sortable by region and provider to identify most profitable providers, regions, patients, or conditions.

3. Data stored on NSP's pharmaceutical and equipment database, including, pharmaceutical product formulations per indication, mixing and dispensing specifics, vendor and supplier information for the formulations, negotiated pricing information, including controlled substance pricing, average wholesale price, and average retail price.

4. NSP's financial data, including financial statements such as profit and lost statements, and balance sheets; financial modeling and trend analysis for medical provider referrals and ongoing patient care strategies; profitability of various segments of NSP's business, including non-DOL compounding versus DOL compounding.

5. NSP's contracts and negotiated pricing with government, PBMs, suppliers, and vendors.

6. NSP's confidential policies and procedures manual.

7. NSP's White Card Market Analysis, including locations of White Card patients and associated DOE sites, number of patients per region, data on the medical providers in the region, analysis of expansion opportunities/competitors in the region, regional compounding pharmacies, and notes regarding NSP's outreach efforts to medical providers in the region, including whether the medical providers service White Card patients.

8. NSP's indication / disease strategies, including indication specific prescriptions, agents, compounds and durable medical equipment likely to be approved by DOL and PBMs.

9. NSP's data and analysis comparing insurance and DOE/White Card claim comparison (rejection and approval), based on indication, prescription, equipment, and pricing.

It is unclear from either the operative complaint or Exhibit 1 if alleged trade secret nos. 5, 8 and 9

are intended to be stand-alone trade secrets or are subsumed in the trade-secret descriptions that precede them. If intended as stand-alone trade secrets, then nos. 5, 8 and 9 are in need of further specificity to ensure that discovery is properly focused and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b). Trade secret no. 5, which generally describes NSP contracts, must identify either specific files containing the contracts and pricing negotiations or the specific contracts themselves. Trade secret no. 8, which refers to certain "strategies," must reference specific files or documents that reflect such strategies. Similarly, trade secret no. 9, which refers to "data" and "analysis," must also identify the files or documents that reflect the described data and analysis. Accordingly, NSP will have to supplement its interrogatory response as directed below.

### III.   CONCLUSION

The Court's ruling on the sufficiency of the trade-secret descriptions breaks the logjam that the Parties have unhelpfully created. Fact discovery in this matter closes on December 13, 2024 (*see* Dkt. 108), and the deadlines below are set with that date in mind. Although the Parties may agree to extend the deadlines set in this order, any request to extend the close of discovery must be directed to Judge Pitts. Accordingly, the Court **ORDERS** as follows:

- Plaintiff shall supplement its November 4 Amended Response to Interrogatories in accordance with this Order no later than **December 4, 2024**.
- NSP has proffered the Court's model protective order with appropriate formatting edits, and Defendant Padhye has acknowledged the appropriateness of a protective order and has not raised any specific objection to NSP's proffer. *See* Dkts. 106 at 5, 9, 106-2. Accordingly, NSP and Defendant Padhye shall file a stipulated protective order for the undersigned's signature no later than **December 4, 2024**. NSP shall endeavor to have Defendant Brown file a joinder to the stipulated protective order in due course.
- There are no specific objections to written discovery requests before the Court, only the Parties' respective general complaints that the other side has failed to respond. Accordingly, no later than **December 9, 2024**, NSP and Defendant Padhye shall respond to any outstanding written discovery requests from each other with verified responses and

production of documents, without waiver of any rights under Civil Local Rule 37-3.

- Defendant Padhye shall sit for a deposition no later than **December 31, 2024**. The Court sets this singular date after the December 13 close of fact discovery to allow for sufficient preparation by the Parties. As opening expert reports are not due until February 2025 (*see* Dkt. 108), this nominal delay will not prejudice either the Parties or the Court.

- NSP does not object to Defendant Padhye's request to re-open the deposition of Defendant Brown. *See* Dkt. 107 at ECF Page 9. Defendant Padhye must meet and confer with Defendant Brown as to a further deposition. On the record before it, the Court will not order a further deposition without assurance that Defendant Brown has had an opportunity to be heard.

**SO ORDERED.**

Dated: November 27, 2024

_____
SUSAN VAN KEULEN
United States Magistrate Judge