Nitoj P. Singh (SBN 265005)
nsingh@dhillonlaw.com
Anthony J. Fusaro, Jr. (SBN 345017)
afusaro@dhillonlaw.com
**DHILLON LAW GROUP INC.**
177 Post Street, Suite 700
San Francisco, CA 94108
Tel. 415.433.1700

*Attorneys for Plaintiff*
*National Specialty Pharmacy, LLC*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL SPECIALTY PHARMACY, LLC | Case Number: 5:23-cv-04357-NW |
| *Plaintiff*, | **PLAINTIFF'S OPPOSITION TO DEFENDANT SAMEER PADHYE'S MOTION PURSUANT TO 28 U.S.C. § 1927 FOR SANCTIONS** |
| vs. | |
| SAMEER PADHYE, an individual, BENJAMIN D. BROWN, an individual, and DOES 1 to 49, inclusive, | |
| *Defendants*. | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

STATEMENT OF ISSUES ................................................................................................ 1

INTRODUCTION ........................................................................................................... 2

FACTUAL BACKGROUND ............................................................................................ 2

ARGUMENT ................................................................................................................... 9

   I.   This Court Should Deny Padhye's Motion for Sanctions Because He Fails to Demonstrate That NSP Knowingly or Recklessly Presented Frivolous Claims, Engaged in Unreasonable and Vexatious Multiplication of Proceedings, or Litigated in Bad Faith. ................................................................................................ 9

      A.   Sanctions are not warranted under Rule 11 because NSP conducted a reasonable investigation into its claims, its pursuit of those claims was objectively reasonable, and Padhye failed to comply with the safe harbor provision. ................................................................................................ 11

      B.   Sanctions are not warranted under § 1927 because NSP has not unreasonably or vexatiously multiplied the proceedings. ....................................... 14

      C.   Sanctions are not warranted under the court's inherent authority because there is no evidence that NSP engaged in bad faith conduct. ................................... 16

   II.   NSP Should Be Awarded Attorneys' Fees and Costs Under Rule 11(c)(2) Because Padhye's Motion Is Frivolous. ........................................................................ 17

CONCLUSION ................................................................................................................ 18

Plaintiff's Opposition to Defendant Padhye's Motion for Sanctions

1

## TABLE OF AUTHORITIES

**Cases**

*Benedict v. Hewlett-Packard Co.*,
    No. 13-CV-00119-LHK,
    2014 WL 234207 (N.D. Cal. Jan. 21, 2014) ..................................................... 17, 18

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991 ........................................................................... 10, 16, 17

*Christian v. Mattel, Inc.*,
    286 F.3d 1118 (9th Cir. 2002) ............................................................ 11, 12, 14

*Fink v. Gomez*,
    239 F.3d 989 (9th Cir. 2001) ................................................................... 10, 17

*Goldwater Bank, N.A. v. Elizarov*,
    No. 5:21-CV-00616-JWH-SP,
    2023 WL 4295255 (C.D. Cal. May 9, 2023) ..................................................... 17, 18

*Holgate v. Baldwin*,
    425 F.3d 671 (9th Cir. 2005) ....................................................... 10, 11, 12, 14

*In re Keegan Mgt. Co., Securities Litig.*,
    78 F.3d 431 (9th Cir. 1996) ................................................... 10, 11, 14, 15

*Operating Engineers Pension Tr. v. A-C Co.*,
    859 F.2d 1336 (9th Cir. 1988) ..................................................... 12, 14

*Radcliffe v. Rainbow Const. Co.*,
    254 F.3d 772 (9th Cir. 2001) ................................................. 11, 12, 14

*Truesdell v. S. Cal. Permanente Med. Grp.*,
    293 F.3d 1146 (9th Cir. 2002) ............................................... 12, 14

**Statutes**

28 U.S.C.A. § 1927 ........................................................................... 10, 11, 14

**Rules**

Fed. R. Civ. P. 11 ........................................................................... 10, 11

Fed. R. Civ. P. 11(b) ....................................................................... 10

Fed. R. Civ. P. 11(c) ....................................................................... 11, 12

*Fed. R. Civ. P.* 11(c)(2) ..................................................................... 14, 17

Plaintiff's Opposition to Defendant Padhye's Motion for Sanctions

**STATEMENT OF ISSUES**

1. Under Rule 11, may Defendant Sameer Padhye obtain sanctions against Plaintiff National Specialty Pharmacy LLC ("NSP") where NSP's counsel conducted a thorough prefiling investigation and narrowed its claims to those supported by testimonial and documentary evidence?

2. May Padhye obtain Rule 11 sanctions where he failed to comply with the safe harbor requirement by not serving the motion on NSP at least 21 days before filing?

3. Does NSP's litigation conduct constitute bad-faith multiplication of proceedings under 28 U.S.C. § 1927 where its counsel streamlined the case, served limited written discovery, took only one deposition, filed no motions other than this opposition, and continued to pursue claims supported by discovery?

4. Where Padhye has presented no evidence that NSP acted in bad faith or with an improper purpose, may the Court impose sanctions against NSP under its inherent authority?

5. Should Padhye's motion be denied, should NSP be awarded attorneys' fees and costs under Rule 11(c)(2) for responding to a Padhye's procedurally improper and factually unsupported sanctions motion?

Plaintiff's Opposition to Defendant Padhye's Motion for Sanctions

**INTRODUCTION**

Defendant Sameer Padhye's ("Padhye") frivolous motion for sanctions is just the latest in a series of unprofessional conduct by his counsel. Somewhat ironically, he brings this motion against Plaintiff National Specialty Pharmacy LLC ("NSP") on the grounds that *NSP's* claims are "frivolous" and marred by "obvious and fatal flaws." *See* Padhye's Motion Pursuant to 28 U.S.C. § 1927 for Sanctions ("Def. Br.") at 9. Yet curiously, **Padhye failed to file a dispositive motion to dispose of these supposedly frivolous claims**. Now that the deadline to do so has passed, he brings this motion for sanctions, which reads like more like a motion to dismiss or motion for summary judgment. But unlike those dispositive procedural devices, the standard here is not whether NSP has stated a plausible claim for relief, or whether there is a genuine dispute of material fact. Instead, the standard here is whether NSP's counsel has knowingly or recklessly presented frivolous claims, or engaged in vexatious or oppressive conduct in bad faith to multiply these proceedings. NSP's claims easily clear these low thresholds.

Contrary to Padhye's assertions, NSP's claims are supported by its allegations regarding Padhye's conduct prior to and following his departure from the company, and the discovery that the parties have engaged in thus far, if anything, has corroborated and strengthened the basis for its claims. Padhye's contentions otherwise are baseless. As shown below, this Court should deny Padhye's motion for sanctions because the record plainly does not support his assertion that NSP's claims are frivolous.

**FACTUAL BACKGROUND**

On June 3, 2024, NSP filed the Second Amended Complaint ("SAC") in this action, bringing claims against Padhye for misappropriation of trade secrets, intentional misrepresentation, fraudulent concealment, promissory fraud, breach of contract, and tortious interference. *See* Docket Number ("Dkt. No.") 83, Second Amended Complaint (hereafter, "SAC"). In the SAC, NSP alleges that Padhye, while employed at NSP, secretly planned a competing business, Taycann Wellness, and intended for that business to operate in the same niche as NSP—the compounding pharmacy and White Card prescription program; misled NSP about his qualifications prior to being hired; concealed his involvement in a competing venture

Plaintiff's Opposition to Defendant Padhye's Motion for Sanctions

while employed with NSP; falsely promised to be working to grow NSP's business when in truth, he was working to develop the business of a direct competitor; solicited NSP employees to leave NSP and join his competing venture; violated the confidentiality and non-compete provisions of his contract; and, upon departure, took with him the confidential data, strategy, and personnel needed to replicate NSP's business for his own gain. *See id.*

**Prefiling Investigation by NSP's Counsel**

Before filing the SAC, NSP's counsel (hereafter, "counsel") undertook a detailed factual investigation to ascertain the viability of the claims asserted by NSP's prior counsel in the First Amended Complaint ("FAC"). Declaration of Nitoj P. Singh ("Singh Decl.") ¶¶ 3-4. At NSP's counsel's direction, NSP's corporate representative, Sanjiv Dhawan, compiled documents and information relevant to the claims in the FAC. *Id.* ¶ 4. Counsel then reviewed internal communications, data exports, employment documents, and other electronically stored information provided by NSP. *Id.* ¶¶ 3-4. Counsel also conducted multiple interviews with Mr. Dhawan and other NSP personnel, including Daniel Brown, a former employee of both NSP and Taycann Wellness. *Id.* ¶¶ 11, 13. Brown described in detail the marketing materials he was asked to create for Taycann while still employed by NSP and the moment he realized Taycann would target NSP's core White Card patient market. *Id.* ¶ 11. These interviews corroborated NSP's suspicion that Padhye had been coordinating a competing venture using NSP's trade secrets, proprietary information, and personnel. *Id.* ¶¶ 10-12, 16-17.

Counsel further examined the contents of dozens of emails that Padhye had sent from his NSP email account to his personal email address in the days surrounding his resignation from NSP. *Id.* ¶¶ 10, 22, Exhibit ("Ex.") A, Emails Padhye Sent to Himself on June 21, 2023. These emails included attachments with NSP's trade secret sales data, marketing strategy, patient claims, pricing models, provider lists, and internal presentations—materials that collectively supported the theory of trade secret misappropriation. *Id.* ¶ 22, Ex. A. Additionally, counsel examined NSP's internal Monday.com CRM records, which showed unauthorized access by Padhye, and co-conspirators Maybelline Sana ("Sana") and Rayne Bridges ("Bridges"), after his

Plaintiff's Opposition to Defendant Padhye's Motion for Sanctions

resignation. *Id.* ¶ 9. Counsel also reviewed Padhye's employment agreement, non-disclosure obligations, and communications regarding the termination of his employment. *Id.* ¶ 18.

Based on this investigation, counsel revised the SAC to remove several defendants, including Sana, Bridges, Abhinay Padhye, Coligomed, Inc., and Enlil, Inc., and to narrow the claims to those supported by admissible and testimonial evidence. *Id.* ¶¶ 5, 7. The causes of action for conversion, conspiracy to convert, and trade libel were also withdrawn after counsel concluded they lacked sufficient factual support. *Id.* ¶ 7.

**Discovery Supports NSP's Claims**

As discovery has now confirmed, the revised SAC is supported by documentary and testimonial evidence.

On July 28, 2022, Padhye incorporated Taycan, LLC, which would later do business as Taycann Wellness. Singh Decl. ¶ 31, Ex. H. Padhye was hired by NSP in October 2022 to grow its existing business and develop new lines of business, and by December 2022 he began conspiring with Sana (who was then also a NSP employee) on Taycann Wellness. Sana, in an August 1, 2023 text message with Bridges (also a former NSP employee), admitted that she started working on Taycann with Padhye beginning in December 2022, with "secret" meetings three times a week, and speaking two to three times a day. *Id.* ¶¶ 26, 27, Exs. E, F. Bridges joined the conspiracy a few months later, and by May 2023, before any of Padhye, Sana, or Bridges had resigned from NSP, they began shopping for a pharmacy or home health agency to acquire for Taycann. *Id.* ¶¶ 26, 27, Exs. E, F. By at least May 2023, the three were discussing potential business opportunities for Taycann, and began withholding data and information from NSP, instead using text messages and personal email addresses to exchange information. *Id.*

The record further supports NSP's allegation that Padhye concealed plans to launch a competing business while still employed with NSP. Emails show he was actively exploring the acquisition of a Los Angeles pharmacy prior to resigning, stating that he wanted to "sign the contract ASAP." Singh Decl. ¶ 23, Ex. B, Padhye Dep. 98:16–102:5. Dhawan testified that Padhye recruited three NSP employees—Daniel Brown, Maybelline Sana, and Rayne Bridges— and contacted one of NSP's key providers, Dr. Capobianco. Id. ¶ 24, Ex. C, Dhawan Dep. 270:22–

4

271:2, 274:9-18. At the same time, Padhye assured NSP he was working to grow its business. But the evidence supports NSP's position that he was laying the groundwork for a competitor.

On June 21, 2023, **the day before he resigned**, Padhye sent dozens of emails from his NSP account to his personal email, attaching NSP's trades secret and confidential marketing materials, sales and financial data, vendor contacts, internal spreadsheets, prescription and claims data, communications about potential pharmacy partnerships that he presumably intended to poach, and other confidential information. Singh Decl. ¶ 22; Ex. A. Padhye admitted he sent these emails and acknowledged the confidentiality of the information. Singh Decl. ¶ 23, Ex. B, Deposition of Sameer Padhye ("Padhye Dep.") 110:13–111:2, 184:6–187:4. He also admitted that he did not typically send emails from his NSP account to his personal account. *See* Padhye Dep. 109:17-110:1 ("Q: How often prior to June 21st, 2023 would yousend yourself emails from your NSP account to your personal gmail account? . . . [Padhye]: I don't remember doing it. Q: Did you do it regularly? . . . [Padhye]: Did I do it regularly? Probably not.")

Initially, Padhye testified that he sent himself NSP's trade secrets and proprietary documents because, supposedly, he was under the false impression that he would remain involved with the company in an "advisory" capacity. Singh Decl. ¶ 23, Ex. B, Padhye Dep. 47:18–49:25; 53:13–55:17; 76:13–78:7. But even assuming *arguendo* that Dhawan made such a comment in passing, the notion that Padhye exported these documents to assist with an "advisory" role is absurd. The supposed conversation—on which his entire justification rests—occurred on June 22, 2023, the day **after** he sent himself NSP's trade secrets and confidential documents. Padhye Dep. 102:6–104:22; 107:7–108:5. By his own account, then, there was no way that he forwarded the materials in anticipation of a role that had not yet been discussed.

Confronted with the truth and the collapse of his original excuse, Padhye then shifted to the dubious position that he "doesn't know" why he sent himself dozens of emails with NSP's trade secrets the day before his resignation, a non-answer he resorted to dozens of times during his deposition. Singh Decl. ¶ 23, Ex. B, Padhye Dep. 103:4-6, 18-20; 104:20-22; 105:22-25; 106:10-13; 107:21–108:5; 109:2-15; 113:25–114:2; 115:3-5, 11-13; 117:23-25; 119:5-7; 122:23-25; 124:18-20; 125:8-13; 127:2-4; 128:14-16; 129:16-17; 130:9-14; 132:4-6; 133:7-9; 134:5-12;

Plaintiff's Opposition to Defendant Padhye's Motion for Sanctions

135:18-19; 136:3-4; 136:25–137:4, 20-22; 139:3-5 (for each citation, Padhye answered "I don't know" to the question of why he forwarded himself NSP's trade secrets and confidential information the day before his relationship with the company came to an end).[1] Moreover, Padhye was fully aware that the documents and information that he forwarded himself was confidential information that he was under a contractual duty to keep private. Padhye Dep. 73:6-11; 111:4-6; 121:22–122:1; 123:5-12; 127:5-10; 185:7-10; 185:20–186:4; 186:14–187:4.

Padhye also accessed NSP's Monday.com CRM platform multiple times after his departure and made himself the sole administrator, locking out NSP staff. Singh Decl. ¶ 24, Ex.

---

[1] During his deposition, Padhye also admitted that when communicating to a potential client for Taycann Wellness, he falsely represented that he had run a compounding pharmacy in Tennessee, and that Taycann had a "team of pharmacists and sales experts." Singh Decl. ¶ 23, Ex. B, Padhye Dep. 141:12–143:14:

> Q: In the email at the top you write, "Thanks for your email. I am not a licensed CA pharmacist, but I have run other compounding pharmacies in Nevada and Tennessee." . . . Which compounding pharmacies did you run in Tennessee?
> [Padhye]: Neither. No.
> Q: Why did you communicate to him that you . . . ran a compounding pharmacy in Tennessee?
> [Padhye]: So at least he would talk to me and give me information;
> Q: So did you lie to him?
> . . .
> [Padhye]: I'm not going to answer that.
> Q: You have to answer. Are you refusing to answer?
> [Padhye]: I didn't lie to him. I just wanted to get information.
> Q: But you were being untruthful when you said you had run a compounding pharmacy in Tennessee, correct?
> [Padhye]: Okay. Yeah.
> Q: Yes. You then write, "I am an investor and I have a team of pharmacists and sales experts." Who were your team of pharmacists?
> [Padhye]: Nobody. We didn't have any. As I said, I'm just trying to get information from him.
> Q: Okay. So you didn't have a team of pharmacists?
> [Padhye]: No.
> Q: That was not truthful?
> [Padhye]: That was not truthful.
> Q: Who were your sales experts?
> [Padhye]: Nobody.
> Q: So that was another untrue statement?
> [Padhye]: Yeah.

Plaintiff's Opposition to Defendant Padhye's Motion for Sanctions

C, 30(b)(6) Deposition of NSP's Corporate Representative Sanjiv Dhawan ("Dhawan Dep.") 80:20–81:4, 87:5-25. The platform contained trade secret protected provider and patient lists, marketing strategy notes, and target data. Singh Decl. ¶¶ 8, 24, Ex. C, Dhawan Dep. 90:1-12. When NSP regained access, it discovered Taycann related comments embedded in the workspace. *Id.* Singh Decl. ¶ 24, Dhawan Dep. 83:6-21.

In contemporaneous text messages, Padhye, Sana, and Bridges admitted to accessing and using NSP's Monday.com account, acknowledged that they could have created a separate Taycann account, and recognized that their conduct risked liability under the Health Insurance Portability and Accountability Act (HIPAA) due to their access of protected patient information. *Id.* ¶¶ 26, 27, Exs. E, F. When NSP discovered the conspirators' unlawful activity, it promptly revoked Sana's and Bridges's access to Monday.com. However, revoking Padhye's access took longer because he had administrator privileges. Aware that they were likely being monitored, Padhye warned his co-conspirators, "[t]he danger is taking that data out now. Sounds like someone is watching." *Id.* ¶ 27, Ex. F. Notably, Padhye never produced these text messages—or any text messages with his co-conspirators—during discovery, further undermining his credibility and raising serious questions about his counsel's diligence and compliance with discovery obligations.

Brown, a former NSP employee who later disassociated from Taycann Wellness, confirmed that while still on NSP's payroll, he was directed by Padhye to design Taycann's branding, including logos, flyers, a multifold brochure, and a mock website. Singh Decl. ¶¶ 11, 25, Ex. D, Deposition of Benjamin "Daniel" Brown ("Brown Dep.") 63:11–74:4. Brown testified that once he learned Taycann intended to target White Card patients—NSP's primary market— he ended the relationship, citing concerns that working with Taycann would violate his non-compete agreement with NSP. Singh Decl. ¶¶ 11, 25, Ex. D, Brown Dep. 42:19–44:18, 76:22– 78:13. Brown understood Taycann to be comprised of Padhye, Bridges, and Sana, with Padhye in charge. Brown Dep. at 45:5-13, 45:10-21.

Brown's testimony corroborated NSP's allegations that Padhye was building a competing business during his employment at NSP. Padhye had shown Brown PowerPoint presentations for

Taycann's business plan, and had discussed targeting pharmacies in New Mexico with White Card patients. Singh Decl. ¶ 25, Ex. D, Brown Dep. 44:6-11, 83:2-22. Padhye also held meetings with Brown regarding Taycann's operations and directed Brown's work on its marketing materials. Singh Decl. ¶¶ 11, 25, Ex. D, Brown Dep. 63:11–74:4.

Regarding NSP's fraud claim, the evidence supports NSP's allegation that Padhye misrepresented his professional background when applying for the job. Dhawan informed NSP's counsel that he hired Padhye based on the belief that he had biopharma experience—a belief reflected in an email referencing that experience, which Padhye did not correct. Singh Decl. ¶¶ 13-14, 23, Ex. B, Padhye Dep. 90:23–91:25. In his deposition, Padhye admitted he had no such experience. Singh Decl. ¶ 23, Ex. B, Padhye Dep. 90:23–91:25.

Further, the evidence obtained during discovery strongly supports NSP's claims for breach of contract and tortious interference. Padhye acknowledged in his deposition that his confidentiality obligations extended beyond the end of his employment. Singh Decl. ¶ 23, Ex. B, Padhye Dep. 72:8–73:3. Nonetheless, the record shows that he solicited its employees and providers in support of Taycann Wellness, and supports the inference that he retained and used NSP's confidential information after leaving, in violation of his Employment Agreement. *Id.* ¶ 24, Ex. C, Dhawan Dep. 270:22–271:2, 274:9–18.

Lastly, although Padhye now attempts to blame the downturn in NSP's business on external factors, particularly the temporary involvement of MyMatrixx as Pharmacy Benefits Manager for the White Card program, that narrative is misleading and incomplete. Reimbursement reductions under MyMatrixx did not begin to materially affect NSP until September or October 2023—well after Padhye's misconduct had already destabilized the company. Had Padhye and his collaborators worked to address the reimbursement issue and develop alternative lines of business—rather than undermining NSP's operations from within—the company could have weathered the temporary drop in revenue. Indeed, by March 2024, MyMatrixx was replaced by Conduent, and reimbursement rates returned to prior levels. *See* Singh Decl. ¶ 32. NSP has retained a compounding pharmacy expert to confirm that the

Plaintiff's Opposition to Defendant Padhye's Motion for Sanctions

reimbursement issue was short-lived and recoverable, undermining Padhye's effort to deflect responsibility for the damage he helped inflict. *Id.* ¶ 33.

**NSP's Good Faith Litigation Conduct**

NSP has acted diligently and in good faith throughout this litigation. As detailed in the Singh Declaration, NSP, though its current counsel, has taken only one deposition; served limited written discovery on Padhye, including one set of requests for production, one set of interrogatories, and one set of requests for admission; and filed no motions prior to this opposition. Singh Decl. ¶ 20. The notion that NSP has multiplied these proceedings is baseless and frankly, absurd. *Id.* Padhye's sole argument to the contrary boils down to his subjective position that NSP's claims lack merit. *See* Defs. Br. at 9-12.[2] But as explained below, that is not the issue before the Court on this motion.

**ARGUMENT**

I.    **This Court Should Deny Padhye's Motion for Sanctions Because He Fails to Demonstrate That NSP Knowingly or Recklessly Presented Frivolous Claims, Engaged in Unreasonable and Vexatious Multiplication of Proceedings, or Litigated in Bad Faith.**

Although Rule 11 and 28 U.S.C. § 1927 both authorize sanctions, they apply to distinct types of conduct and impose different standards. Rule 11 targets the filing of pleadings, motions, and other papers, and permits sanctions where an attorney presents a claim without legal or factual support after conducting an objectively reasonable prefiling investigation. *See* Fed. R. Civ. P.

---

[2] Opposing counsel's brief contains numerous citation errors and omissions. Exhibit B is missing page 39, which is cited in support of multiple assertions. In addition, counsel repeatedly cites Exhibit C for testimony that does not exist in the record, and he appears to have confused Exhibits C and D. For example, counsel cites "Exh. C at p. 288:22-25" for the proposition that "NSP has no evidence of anyone benefiting at all from this alleged misappropriation," but the correct citation is to Exhibit D at 288:22-25. Similarly, several references to Exhibit C—including those at pages 100–102, 121–122, 127–128, 131–133, 137, 142–143, 146–147, 150–151, 155–156, 158–159, 160–161, 166, 170, 172–174, 175, 198–199, and 203—either do not exist in the excerpted transcript submitted or do not support the assertions made. *See, e.g.*, Exh. C (only pages 23–24 included, which make no reference to the White Card Program). Moreover, counsel cites "Exh. D at p. 336:21–25," but Exhibit D contains only 302 pages. These errors reflect Padhye's counsel's inattention to citation and complicate NSP's ability to respond accurately.

9

Plaintiff's Opposition to Defendant Padhye's Motion for Sanctions

11(b); *Holgate v. Baldwin*, 425 F.3d 671, 675-76 (9th Cir. 2005). By contrast, § 1927 addresses litigation conduct that unreasonably and vexatiously multiplies proceedings after filing, and requires a showing of subjective bad faith. *See* 28 U.S.C.A. § 1927; *In re Keegan Mgt. Co., Securities Litig.*, 78 F.3d 431, 435-36 (9th Cir. 1996).

Courts have emphasized that the two standards are not interchangeable and entail material differences: Rule 11 applies to initial filings, whereas § 1927 applies only to conduct that multiplies proceedings after a case is underway. *In re Keegan*, 78 F.3d at 434-36. Rule 11 is governed by an "objective-objective" standard, permitting sanctions where no reasonable attorney would have found the filing well-grounded in fact or law after reasonable inquiry; whereas § 1927 requires subjective bad faith—either knowingly or recklessly asserting a frivolous argument, or pursuing litigation for an improper purpose such as harassment. *See id.*

Apart from statutory authority, courts possess inherent power to sanction bad faith conduct that "abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-47 (1991); *see also Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001).

Here, while Padhye styles his motion as one for sanctions under 28 U.S.C. § 1927, his arguments focus primarily on the adequacy of NSP's prefiling investigation and the factual basis for its claims—matters that fall squarely within the scope of Rule 11. Specifically, he contends that NSP's SAC was filed without evidentiary support and that NSP's counsel failed to conduct a reasonable inquiry before asserting its claims. *See* Defs. Br. at 9-11. Padhye's sole argument that NSP has multiplied these proceeding in bad faith is that they did so by pursuing the claims outlined in the SAC—claims that Padhye did not move to dismiss or seek summary judgment on.

As shown below, sanctions are not warranted under any available authority. First, Rule 11 sanctions are improper because NSP conducted an objectively reasonable investigation before filing the SAC, which included dropping parties and claims that the investigation revealed were unwarranted and providing a more precise and substantiated description of the trade secrets at issue. *See* Fed. R. Civ. P. 11; *Holgate*, 425 F.3d at 676; *see also* Singh Decl. ¶¶ 3-8. And fatally, Padhye failed to satisfy Rule 11's safe harbor requirement by serving a copy of the motion at least

Plaintiff's Opposition to Defendant Padhye's Motion for Sanctions

21 days before filing it. *See* Fed. R. Civ. P. 11(c); *Radcliffe v. Rainbow Const. Co.*, 254 F.3d 772, 788-89 (9th Cir. 2001); *see also* Singh Decl. ¶ 29.

Next, § 1927 sanctions are inappropriate because NSP has not unreasonably or vexatiously multiplied these proceedings—it has complied with discovery deadlines, refrained from filing meritless motions the needlessly consume this Court's time and resources, and continued to pursue claims that have only been strengthened by discovery. 28 U.S.C. § 1927; *In re Keegan*, 78 F.3d at 435; *see also* Singh Decl. ¶¶ 20–21. Further, Padhye's assertions that NSP "admitted it did not have the requisite evidence to support its claims and ignored evidence that directly contradicted them" are deliberate falsehoods aimed at impugning opposing counsel's integrity, made without a shred of factual support. Defs. Br. at 9 (making these assertions without citation); *see also* Singh Decl. ¶ 30.

Finally, sanctions under the Court's inherent authority are also unwarranted, as there is no evidence that NSP acted in bad faith—either willfully or recklessly for an improper purpose—or otherwise abused the judicial process. Singh Decl. ¶¶ 3, 20-21. Each of these issues is addressed in turn below.

A.     **Sanctions are not warranted under Rule 11 because NSP conducted a reasonable investigation into its claims, its pursuit of those claims was objectively reasonable, and Padhye failed to comply with the safe harbor provision.**

As stated above, Rule 11 requires attorneys to conduct an objectively reasonable inquiry into both the facts and the law supporting their claims, and to file only those claims that have a reasonable basis in both. *See* Fed. R. Civ. P. 11; *Holgate*, 425 F.3d at 676. Courts apply a two-prong test to determine whether Rule 11 sanctions are warranted: "(1) whether the complaint is legally or factually 'baseless' from an objective perspective, and (2) if the attorney has conducted 'a reasonable and competent inquiry' before signing and filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (citation omitted); *see also Holgate*, 425 F.3d at 676 ("As shorthand for this test, we use the word 'frivolous' to denote a filing that is *both* baseless *and* made without a reasonable and competent inquiry") (emphasis original) (internal quotations omitted) (quoting *In re Keegan*, 78 F.3d at 434).

Plaintiff's Opposition to Defendant Padhye's Motion for Sanctions

A reasonable inquiry is one that an objectively reasonable attorney would undertake given the circumstances before filing to determine whether the claims are well-grounded in fact and law. *See Holgate*, 425 F.3d at 676; *Truesdell v. S. Cal. Permanente Med. Grp.*, 293 F.3d 1146, 1153 (9th Cir. 2002).

A claim is objectively reasonable under Rule 11 if, at the time of filing, it reflects a plausible view of the facts and governing law. *Christian*, 286 F.3d at 1127. Sanctions are not warranted simply because a claim is later dismissed, so long as a reasonable attorney could have believed it was well-founded at the time it was filed. *Operating Engineers Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988).

Finally, Rule 11(c)(2) requires strict compliance with its safe harbor provision. *See* Fed. R. Civ. P. 11(c); *Radcliffe*, 254 F.3d at 788-89. Specifically, the safe harbor provision requires a party filing a sanctions motion to serve that motion on the opposing party at least 21 days before it is filed, affording the nonmovant an opportunity to withdraw or correct the challenged filing. *See id.* Formal service of the motion—not a mere warning letter—is required. *See Radcliffe*, 254 F.3d at 788-89. A party's failure to comply with the safe harbor provision is fatal to its sanctions motion, regardless of its substance. *See id.*

Here, Rule 11 sanctions are unwarranted because NSP's counsel conducted a thorough and reasonable investigation before filing the SAC. *See Christian*, 286 F.3d at 1127; *Holgate*, 425 F.3d at 676; *see also* Singh Decl. ¶¶ 3-4. After taking over from prior counsel, NSP's attorneys reviewed the factual record, narrowed the case to the strongest claims and defendants, and amended the complaint to reflect the information uncovered through that investigation. Singh Decl. ¶¶ 3, 5–7.

To start its investigation, NSP's legal team asked the company to send all documents and communications relevant to Padhye's conduct before, during, and after his employment. Singh Decl. ¶ 4. The review began with Padhye's handling of NSP's trade secrets. Internal records showed that in the days before resigning, Padhye forwarded himself files containing trade secret and confidential pricing strategies, marketing analyses, patient and provider lists, vendor contacts, and CRM data. *Id.* ¶¶ 10, 22, Ex. A. NSP confirmed that this information constituted trade

Plaintiff's Opposition to Defendant Padhye's Motion for Sanctions

secrets—material not publicly available and developed through substantial internal time, effort, and expense. *Id.* ¶ 8. It was also confirmed that Padhye retained access to those materials at the time of his departure. *Id.* ¶ 9.

NSP also provided materials to its counsel reflecting what happened after Padhye left. Internal communications and employment records indicated that multiple NSP employees resigned in the weeks following his departure and joined his new venture, Taycann Wellness. Singh Decl. ¶¶ 16, 17. The timing of these departures, along with the surrounding correspondence, suggested efforts to disrupt NSP's workforce and business relationships. *Id.* ¶¶ 16-17, 19, 26. Further, the investigation revealed that after his departure from the company, Padhye had gained administrator access to NSP's CRM system, Monday.com, accessed NSP's confidential data, and left notes indicating sales efforts on behalf of Taycann Wellness. *Id.* ¶ 9.

Finally, NSP produced documents from the hiring process in which Padhye was described as having biopharma experience. Singh Decl. ¶ 14. Emails showed that he never corrected that material implication, despite later admitting it was inaccurate. *Id.* ¶¶ 14, 23, Ex. B, Padhye Dep. 90:23–91:25.

Taken together, these findings provided a reasonable basis for the claims in the SAC. The records supported the trade secret misappropriation claim by showing Padhye took and retained confidential materials just before leaving the company. Singh Decl. ¶¶ 10, 12, 22, Ex. A. They corroborated the breach of contract claim by documenting his violation of the confidentiality and non-compete provisions in his Employment Agreement. *Id.* ¶¶ 18, 23, Ex. B, Padhye Dep. 72:8–73:3. They supported the tortious interference claim by reflecting deliberate recruitment of NSP employees and disruption of its existing business relationships. *Id.* ¶¶ 16, 19, 26. And they provided a factual basis for the fraud claim, which alleged that Padhye made material misrepresentations and omissions to obtain his position, and concealed the material fact that he intended to launch a competing venture while still employed with NSP. *Id.* ¶¶ 13–17.

After completing this investigation, NSP's counsel amended the complaint to reflect the evidence. Singh Decl. ¶¶ 5-7. They narrowed the claims, dropped several defendants, and tailored the trade secret allegations to more precisely describe the protected materials. *Id.* ¶¶ 5-6. These

Plaintiff's Opposition to Defendant Padhye's Motion for Sanctions

steps reflect exactly the kind of measured and competent inquiry Rule 11 requires. *See Holgate*, 425 F.3d at 676; *Truesdell*, 293 F.3d at 1153.

Sanctions are not appropriate simply because Padhye disputes NSP's allegations. The test under Rule 11 is not whether the claims will ultimately prevail, but whether they reflect a plausible view of the facts and law when filed. *See Christian*, 286 F.3d at 1127; *Operating Eng'rs*, 859 F.2d at 1344. Here, they plainly did.

In any event, Padhye's Rule 11 motion fails for an independently sufficient reason: he failed to comply with the rule's safe harbor provision. *See Fed. R. Civ. P.* 11(c)(2). That provision requires that a sanctions motion be served on opposing counsel at least 21 days before filing, affording time to withdraw or correct the challenged filing. *See Radcliffe*, 254 F.3d at 788–89; *Holgate*, 425 F.3d at 678. Here, Padhye never served the motion to Plaintiff's at all. Singh Decl. ¶ 29. That procedural failure is dispositive under Rule 11. *See Holgate*, 425 F.3d at 678.

Accordingly, Rule 11 sanctions are inappropriate because NSP's counsel conducted a reasonable and competent prefiling investigation, the SAC reflects an objectively grounded legal theory, and Padhye failed to comply with the safe harbor provision—any one of which provide sufficient grounds to defeat his motion under Rule 11.

### B. Sanctions are not warranted under § 1927 because NSP has not unreasonably or vexatiously multiplied the proceedings.

Section 1927 authorizes sanctions only against attorneys who "unreasonably and vexatiously" multiply proceedings after a case is filed. 28 U.S.C. § 1927; *In re Keegan Mgmt. Co. Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996). Unlike Rule 11, which applies an objective standard, § 1927 requires a showing of subjective bad faith—such as knowingly or recklessly advancing frivolous arguments or acting with the intent to harass or delay. *Id.* at 436. The statute "applies only to unnecessary filings and tactics once a litigation has begun," and does not reach initial pleadings. *Id.* at 435.

Here, sanctions are unwarranted because NSP has not engaged in any unreasonable or vexatious litigation conduct, let alone acted in bad faith. To the contrary, the record shows that NSP has litigated this case in a measured and proportional manner throughout.

Plaintiff's Opposition to Defendant Padhye's Motion for Sanctions

Since taking over the case, NSP's current counsel has streamlined the litigation rather than multiplied it. Singh Decl. ¶ 20. They amended the complaint to narrow the claims, reduced the number of defendants, and focused on the strongest allegations. *Id.* ¶¶ 5-7. They have conducted discovery efficiently—serving limited written discovery, including one set of requests for production, one set of interrogatories, and one set of requests for admission, and taking only one deposition. *Id.* ¶ 20. They have not filed a single motion other than this opposition. *Id.* That is not vexatious or oppressive conduct; it is disciplined litigation.

Nor can § 1927 sanctions rest on the assertion that NSP's claims lack merit. The Ninth Circuit has made clear that pursuing unsuccessful claims is not grounds for sanctions absent bad faith. *See In re Keegan*, 78 F.3d at 436. Here, NSP's claims were brought after a thorough investigation, and discovery to date—including Padhye's deposition—has only strengthened them. Singh Decl. ¶¶ 3, 21.

For example, after the SAC was filed, discovery confirmed that on June 21, 2023—the day before he resigned—Padhye forwarded dozens of emails from his NSP account to his personal Gmail containing confidential and trade secret materials, including internal marketing strategy, financial and prescription data, vendor and pharmacy contacts, and other proprietary information, then offered implausible and shifting explanations for doing so before ultimately admitting he "didn't know" why. Singh Decl. ¶¶ 22–23, Exs. A, B, Padhye Dep. 102:6–104:22, 110:13–111:2, 184:6–187:4. This evidence is further corroborated by text messages between Padhye and his co-conspirators, Maybelline Sana and Rayne Bridges, in which they discuss planning Taycann Wellness during Padhye's employment, accessing NSP's Monday.com system to extract trade secrets after their departure, and targeting NSP's New Mexico and California contacts—with Padhye warning, "[t]he danger is taking that data out now. Sounds like someone is watching. The account deactivation is a real stuff." Singh Decl. ¶¶ 26–27, Exs. E, F.

NSP later discovered that Padhye had locked its staff out of Monday.com and embedded Taycann-related sales notes and strategy documents in the platform, which contained protected provider and patient lists. Singh Decl. ¶¶ 8, 24, Ex. C, Dhawan Dep. 80:20–81:4, 83:6–21, 87:5–90:12. Brown, a former NSP employee, testified that while still on NSP's payroll, he was directed

Plaintiff's Opposition to Defendant Padhye's Motion for Sanctions

by Padhye to design Taycann's branding and materials, and that he ultimately cut ties with Taycann after learning it intended to target NSP's White Card patients—violating his non-compete. *Id.* ¶¶ 11, 25, Ex. D, Brown Dep. 42:19–44:18, 63:11–74:4, 76:22–78:13. Taken together, these post-filing revelations not only confirm the plausibility of NSP's claims but strongly reinforce their factual basis—refuting any argument that NSP's continued prosecution of this case has been frivolous or in bad faith.

At a minimum, the record presents questions of material fact, which precludes any argument that NSP's continued pursuit of these claims is sanctionable. Padhye did not move to dismiss the SAC, nor has he sought summary judgment. That strategic choice makes his § 1927 motion all the more inappropriate.

Moreover, there is no dispute that NSP suffered harm. The evidence already reflects that Padhye took confidential materials, breached his employment agreement, contacted key employees and business partners after leaving, and launched a direct competitor. Singh Decl. ¶¶ 10, 16, 18-19, 22. The full extent of NSP's damages will depend on expert analysis—including loss calculations and forensic review of financial records—which has not yet occurred. Moving for sanctions while that process is pending is premature at best and, at worst, a bad faith attempt to discredit claims before they can be fully developed.

Because Defendant has not shown that NSP acted with the requisite bad faith to harass or delay—or that it unreasonably multiplied proceedings in any way—his request for § 1927 sanctions should be denied.

          **C.**    **Sanctions are not warranted under the court's inherent authority because there is no evidence that NSP engaged in bad faith conduct.**

Under their inherent authority, courts may sanction conduct that "abuses the judicial process." *Chambers*, 501 U.S. at 44-45. This power "must be exercised with restraint and discretion," and requires a specific finding that the sanctioned party "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *See id.* "Mere recklessness, without more, does not justify sanctions under a court's inherent power;" rather, the conduct must be either willful,

Plaintiff's Opposition to Defendant Padhye's Motion for Sanctions

or reckless *and* carried out for an improper purpose—such as to harass, delay, or gain an unfair tactical advantage. *See Fink*, 239 F.3d at 993-94.

There is no basis for such a finding here. NSP's claims were brought after a good-faith prefiling investigation, narrowed from the prior complaint, and supported by the evidentiary record. Singh Decl. ¶¶ 3, 5-7, 10-12, 20-22. NSP has conducted itself reasonably throughout this case and has not engaged in any conduct that could be construed as abusive or improper. *See Chambers*, 501 U.S. at 44-45; *Fink*, 239 F.3d at 993-94; *see also* Singh Decl. ¶¶ 3, 20-21.

At most, Padhye disagrees with NSP's claims. But that is not a basis for sanctions, and certainly not under the court's inherent authority. Accordingly, because there is no indication that NSP has acted in bad faith, sanctions on this basis should be denied as well.

## II.    NSP Should Be Awarded Attorneys' Fees and Costs Under Rule 11(c)(2) Because Padhye's Motion Is Frivolous.

Rule 11(c)(2) permits a court to award attorneys' fees and reasonable expenses to the prevailing party on a sanctions motion where such an award is "warranted." *See* Fed. R. Civ. P. 11(c)(2); *Benedict v. Hewlett-Packard Co.*, No. 13-CV-00119-LHK, 2014 WL 234207, at *12 (N.D. Cal. Jan. 21, 2014); *Goldwater Bank, N.A. v. Elizarov*, No. 5:21-CV-00616-JWH-SP, 2023 WL 4295255, at *5 (C.D. Cal. May 9, 2023). Courts have held that such an award is warranted when a party is forced to defend against a "frivolous" sanctions motion, meaning one that lacks a reasonable basis in fact or law. *See Goldwater*, 2023 WL 4295255, at *5–6.

Here, an award of NSP's attorneys' fees and expenses is warranted. Padhye's motion is plainly frivolous. He seeks sanctions for claims brought after a careful prefiling investigation, supported by internal communications, employment records, CRM logs, and interviews with witnesses, including Daniel Brown and Padhye himself. *See* Singh Decl. ¶¶ 3-4, 9-11, 13, 23-25. That evidence confirmed that Padhye misappropriated trade secrets, breached his contractual obligations, and laid the groundwork for a competing business while still on NSP's payroll. *See id.* ¶¶ 10, 12, 16, 18–19, 23–24, Exs. B–C, Padhye Dep. 106:16–111:6, Dhawan Dep. 270:22–271:2, 274:9-18. Discovery has only bolstered those claims, as reflected in the deposition

Plaintiff's Opposition to Defendant Padhye's Motion for Sanctions

testimony and document trail Padhye himself created. *See id.* ¶¶ 21–23, Exs. A, B, Padhye Dep. 102:6–104:22; 107:7–108:5. His motion ignores all of this.

This is precisely the sort of conduct Rule 11 exists to deter.[3] NSP has been forced to respond to a sanctions motion that ignores the Rule's safe harbor provision, disregards the standard for bad faith, and mischaracterizes the record. Courts routinely award fees where a party must defend against such tactics. *See Goldwater*, 2023 WL 4295255, at *5–6; *Benedict*, 2014 WL 234207, at *12; *see also* Singh Decl. ¶¶ 3, 20-21. Padhye offers no colorable legal or factual basis for sanctions. That he asserts NSP should be liable for sanctions for bringing *any* of its claims—including its straightforward breach of contract claim—only underscores his motion's frivolous nature. Simply put, Padhye's motion is entirely without merit.

Padhye's intent here is transparent: to distract from the claims against him by shifting focus to the attorneys prosecuting them. That is not what Rule 11 was designed for—in fact, it is exactly the kind of tactics that Rule 11 was designed to guard against. His frivolous filing abuses the judicial process and wastes this Court's time and resources. Accordingly, NSP respectfully requests an award of its reasonable fees and expenses incurred in preparing this opposition.

## CONCLUSION

For the foregoing reasons, this Court should deny Padhye's sanctions motion in its entirety and award NSP attorney's fees and costs incurred in opposing it.

Dated: June 23, 2025

**DHILLON LAW GROUP INC.**

By: */s/ Nitoj P. Singh*
    Nitoj P. Singh (SBN 265005)
    Anthony J. Fusaro, Jr. (SBN 345017)
    Dhillon Law Group Inc.
    177 Post Street, Suite 700
    San Francisco, CA 94108
    Tel. 415.433.1700
    nsingh@dhillonlaw.com

---

[3] As discussed above, although Padhye styles his motion as proceeding under § 1927, in substance, he cites and relies on Rule 11. *See* Defs. Br. at 9.

Plaintiff's Opposition to Defendant Padhye's Motion for Sanctions

afusaro@dhillonlaw.com
*Attorneys for Plaintiff*
*National Specialty Pharmacy, LLC*

Plaintiff's Opposition to Defendant Padhye's Motion for Sanctions

**CERTIFICATE OF SERVICE**

I hereby certify that on June 23, 2025, a true copy of the above document was served upon Defendant Padhye's counsel, Richard H. Poulson, via email, at:

Richard H. Poulson
Law Office of Richard H. Poulson
The Mansard Building
2233 Santa Clara Avenue, Suite 3
Alameda, CA 94501
Tel: (510) 747-8034
rich@richardpoulsonlaw.com

Executed on June 23, 2025, in Newark, New Jersey

*/s/ Anthony J. Fusaro, Jr.*
Anthony J. Fusaro, Jr.

Plaintiff's Opposition to Defendant Padhye's Motion for Sanctions