Nitoj P. Singh (SBN 265005)
nsingh@dhillonlaw.com
Anthony J. Fusaro, Jr. (SBN 345017)
afusaro@dhillonlaw.com
**DHILLON LAW GROUP INC.**
177 Post Street, Suite 700
San Francisco, CA 94108
Tel. 415.433.1700

*Attorneys for Plaintiff*
*National Specialty Pharmacy, LLC*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NATIONAL SPECIALTY PHARMACY, LLC<br><br>*Plaintiff,*<br><br>vs.<br><br>SAMEER PADHYE, an individual, BENJAMIN D. BROWN, an individual, and DOES 1 to 49, inclusive,<br><br>*Defendants.* | Case No. 5:23-cv-04357-NW<br><br>**DECLARATION OF NITOJ P. SINGH IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT SAMEER PADHYE'S MOTION PURSUANT TO 28 U.S.C. § 1927 FOR SANCTIONS** |

1

I, Nitoj P. Singh, declare as follows:

1. I am an attorney licensed to practice in the State of California, a partner at Dhillon Law Group Inc., and counsel of record for Plaintiff National Specialty Pharmacy LLC ("NSP") in this action. I have personal knowledge of the facts stated herein and could and would competently testify to the same if called as a witness.

2. I make this declaration in support of NSP's opposition to Defendant Sameer Padhye's motion for sanctions under Rule 11 and 28 U.S.C. § 1927.

3. The allegations in the Second Amended Complaint ("SAC") were based on a reasonable pre-filing investigation, which included review of documentary evidence, communications with NSP's representatives and third parties, and careful legal analysis. At no point did NSP or its counsel act in bad faith or for an improper purpose.

**Pre-Filing Investigation and Changes to SAC**

4. Prior to filing the SAC, I instructed NSP's corporate representative, Sanjiv Dhawan, to provide me with all documents and information in NSP's possession that supported the claims asserted in the First Amended Complaint ("FAC").

5. After reviewing that material, I made the decision to remove several defendants named in the FAC, including Maybelline Sana, Rayne Bridges, Abhinay Padhye, Coligomed, Inc., and Enlil, Inc.

6. I also revised the trade secret allegations to ensure compliance with federal pleading standards, including by articulating with specificity the categories of confidential and proprietary information that NSP asserted as protectable trade secrets.

7. In addition, I determined that certain causes of action—specifically for conversion, conspiracy to convert, and trade libel—did not have a sufficient factual or legal basis to proceed and therefore removed them from the SAC.

**Trade Secret Identification and Misappropriation Claims**

8. Based on NSP's internal documents and information provided by Dhawan, I concluded that NSP possessed numerous categories of legally protectable trade secrets, including but not limited to:

        a.    NSP's proprietary database of complex patient and provider information, which contained sortable data on diagnosis, prescription history, referring providers, and engagement with the White Card program;

        b.    NSP's customer research and marketing systems maintained in its Monday.com CRM platform;

        c.    Partner contact information and strategic relationships; and

        d.    Pricing strategies, and marketing methods.

9. Dhawan informed me that after his resignation from NSP, Defendant Padhye made himself the administrator of NSP's CRM system containing this confidential information.

10. Dhawan also provided me with emails that Padhye had forwarded to his personal account from his NSP email address on June 21, 2023—the day before his relationship with NSP ended. These emails attached confidential documents and trade secrets of NSP.

11. I also spoke with former-Defendant Daniel Brown, who told me that Defendant Padhye had solicited him to create marketing materials for Taycann Wellness—a competing entity—while Brown was still employed by NSP. Brown stated that he understood Taycann intended to operate in the White Card prescription market, which was NSP's core business. Upon learning this, Brown said he terminated his relationship with Taycann to avoid violating the non-compete clause in his employment agreement with NSP.

12. Based on this information, I concluded that NSP had a viable claim against Defendant Padhye for trade secret misappropriation.

**Fraud-Based Claims**

13. Prior to including a claim for intentional misrepresentation in the SAC, I spoke with Dhawan regarding Padhye's hiring. Dhawan informed me that Padhye had misrepresented his experience in the pharmaceutical industry.

14. Dhawan showed me an email exchange in which he had stated to Padhye that he understood Padhye had "biopharma" experience but not pharmaceutical experience. Padhye did not refute this statement. Dhawan later learned that Padhye had no experience in either sector.

15. Based on this evidence, I concluded that there was a good-faith basis for asserting an intentional misrepresentation claim.

16. At the time the SAC was filed, NSP's claims for fraudulent concealment and promissory fraud were also based on the information and documents described above. These showed that Defendant Padhye had secretly planned to launch a competing company—Taycann Wellness—while still employed by NSP and had recruited NSP personnel, including Brown, Sana, and Bridges, to assist in this effort.

17. I concluded that these allegations supported claims for fraudulent concealment and promissory fraud because Padhye concealed material facts about his competing business plans while falsely committing to grow NSP's operations.

### Contract and Interference Claims

18. NSP's breach of contract claim against Padhye was based on his violation of his confidentiality and non-compete agreements contained in his employment agreement with NSP and supported by the documents and conduct outlined above. Based on this, I determined that NSP had a viable cause of action for breach of contract.

19. Similarly, I concluded that Padhye's recruitment of Brown, Bridges, and Sana to join Taycann while they were affiliated with NSP gave rise to a plausible claim for tortious interference.

### Post-Filing Conduct and Discovery

20. Since filing the SAC, NSP has taken measured and proportionate litigation steps. NSP has taken only one deposition, has not filed any motions, and has conducted limited written discovery. NSP has not engaged in any conduct that would multiply the proceedings.

21. To the contrary, the discovery that has been conducted has confirmed and strengthened the central theory of NSP's claims.

22. On June 21, 2023, the day before Defendant Padhye's departure from NSP, he sent himself numerous emails attaching NSP's confidential information and trade secrets. True and correct copies of these emails are attached as **Exhibit A**. These emails include the following trade secrets and confidential information owned by NSP:

4

  a. Sales data;

  b. Marketing materials;

  c. Communications with prospective vendors;

  d. Financial information;

  e. Patient claims;

  f. Prescription and provider data;

  g. White Card prescription program information;

  h. Pharmacy data; and

  i. Information on pharmacy partnerships NSP was pursuing.

23. True and correct copies of relevant excerpts of Defendant Padhye's deposition transcript are attached as **Exhibit B**.

24. True and correct copies of relevant excerpts of the deposition of Sanjiv Dhawan (NSP's 30(b)(6) representative) are attached as **Exhibit C**.

25. True and correct copies of relevant excerpts of the deposition of Daniel Brown are attached as **Exhibit D**.

26. True and correct copies of text messages between Maybelline Sana and Rayne Bridges—two former-NSP employees that Defendant Padhye enticed to leave NSP and join his competing venture, Taycann Wellness—are attached here as **Exhibit E**. These text messages were produced by Bridges during discovery in NSP's litigation against her and co-Defendant Maybelline Sana in the U.S. District Court for the District of Nevada (Case No. 2:25-CV-00295-CDS-MDC).

27. True and correct copies of a group text message conversation between Defendant Padhye, Maybelline Sana, and Rayne Bridges are attached here as **Exhibit F**. These text messages were also produced by Bridges during discovery in NSP's litigation against her and co-Defendant Maybelline Sana in the U.S. District Court for the District of Nevada (Case No. 2:25-CV-00295-CDS-MDC).

28. True and correct copy of emails that Defendant Padhye sent to pharmacies that he was looking to partner with or purchase are attached as **Exhibit G**.

29. Defendant Padhye did not serve a copy of his sanctions motion on NSP prior to filing.

30. At no point has NSP or its counsel admitted that it did not have the requisite evidence to support its claims, or ignored evidence that directly contradicted them.

31. A true and correct copy of the Articles of Organization for Taycan, LLC in California is attached as **Exhibit H**.

32. NSP has retained a compounding pharmacy expert to confirm that the reimbursement issue for White Card prescriptions was short-lived and recoverable, and returned to prior levels by March 2024.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: June 23, 2025            /s/ Nitoj P. Singh
                                Nitoj P. Singh