1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7    NATIONAL SPECIALTY PHARMACY, LLC,

Case No. 23-cv-04357-NW

8              Plaintiff,

9        v.

**ORDER DENYING DEFENDANT'S MOTION FOR SANCTIONS AND DISMISSING ACTION**

10

SAMEER PADHYE,

Re: ECF No. 133

11              Defendant.

12

13        This order follows the Court's oral rulings on August 19, 2025, denying Defendant's

14   motion for sanctions and, pursuant to the Order to Show Cause, dismissing this case without

15   prejudice as a sanction for failure to comply with Court orders.  *See* ECF No. 126, 139.

16   **I.      BACKGROUND**

17        **A.      The First 18 months of Litigation**

18        This case began on August 24, 2023, when Plaintiff National Specialty Pharmacy, LLC

19   ("NSP") filed its action against numerous Defendants alleging among other claims

20   misappropriation of trade secrets.  On January 4, 2024, NSP's first attorney, Cyrus Johnson, filed

21   a motion to withdraw as counsel, asserting that there was a breakdown in communication

22   "rendering effective representation interrupted."  ECF No. 56.  Four days later, the Court (Pitts, J.)

23   issued an order staying the case for 30 days because NSP's business had closed, and Mr. Johnson

24   had sought to withdraw as counsel.  ECF No. 62.  The Court: admonished the parties to timely file

25   a case management statement that complies with the standing orders of the Court and complete

26   and file the required ADR certification; ordered Mr. Johnon to file a status report by February 1,

27   2024, indicating whether NSP (an LLC that must be represented by counsel in court) had retained

28   substitute counsel and confirming that he complied with all the rules of professional conduct and

1      local rules governing withdraw; and continued any ruling on the motion to withdraw until the next

2      scheduled case management conference ("CMC") on March 7, 2024.  *Id.*  On February 1, 2024,

3      the Court granted NSP's motion seeking the withdraw of Mr. Johnson, and the substitution of

4      attorneys Nitoj Singh and Anthony Fusaro of the Dhillon Law Group.  ECF Nos. 66, 68.

5              On February 22, 2024, the Court extended the deadline to file a joint case management

6      statement and admonished the parties to meet and confer to file a single document that included a

7      proposed case schedule and approach for ADR.  ECF No. 75.  The parties complied on February

8      29, 2024 and the Court held the CMC as well as hearings on various motions.  *See* ECF Nos. 79,

9      80, 81.  On May 16, 2024, the Court granted the motions to dismiss of several Defendants, leaving

10     two Defendants in the case, Sameer Padhye and Benjamin Brown.  *See* ECF No. 82.

11             The Court issued a case management order on July 2, 2024.  ECF No. 90.  The Court set

12     the matter for trial on May 12, 2025.  *Id.*  Six months later NSP filed a motion to continue the trial,

13     which was opposed, with both sides asserting that the other was engaged in unreasonable

14     discovery practices.  ECF Nos. 101, 105.  On November 22, 2024, the Court issued an updated

15     case management order that provided a complete schedule including a dispositive motion deadline

16     of April 21, 2025, expert disclosures on July 11, 2025, and a jury trial beginning on September 8,

17     2025.  ECF No. 108.

18         **B.      2025 Events**

19             **1.      Dispositive Motions and Padhye's "Motion for Sanctions"**

20             On February 24, 2025, this case was transferred to the undersigned judge, though all

21     "briefing schedules for motions remain[ed] unchanged."  ECF No. 112.  On February 25, 2025,

22     Plaintiff and Defendant Mr. Brown stipulated to Mr. Brown's dismissal, leaving Mr. Padhye as the

23     sole Defendant.  ECF No. 113, 114.  The Court held a CMC on May 21, 2025, and issued an

24     updated schedule continuing the jury trial by one week to September 15, 2025.  ECF No. 118.

25              At the CMC, Padhye's counsel, Richard Poulson, asked the Court to reopen the

26     dispositive motion deadline that had closed a month earlier.  The Court denied that request.

27     Padhye then filed a written motion asking this Court to extend the dispositive motion deadline,

28     which the Court again denied because the motion lacked good cause.  ECF No. 119.  Padhye

United States District Court
Northern District of California

1    immediately filed a motion for leave to file a motion for reconsideration, that also lacked good

2    cause.  ECF No. 121.  On May 27, 2025, the Court denied the motion for reconsideration and

3    admonished counsel to comply with Court orders (including the standing order for civil cases), to

4    file all requests on the court docket, and to not to e-mail the Court directly.  ECF Nos. 121, 123.

5    Two days later, on May 29, 2025, Padhye again filed a motion for leave to file a motion for

6    reconsideration, offering the same facts and argument contained in the three previous requests

7    rejected by the Court.  ECF No. 124.  The Court denied Defendant's motion.  ECF No. 125.

8    　　　　On June 9, 2025, Padhye took a different tack.  He filed what he titled a "Motion for

9    Sanctions under 28 U.S.C. § 1927," requesting sanctions against Plaintiff's current attorney

10   *personally*, for unreasonably and vexatiously multiplying court proceedings.  ECF No. 126.  The

11   motion was an end-run around the Court's orders because substantively the motion was one for

12   summary judgment against NSP, with an added argument that NSP's claims were so clearly

13   lacking that, among other alleged transgressions, the decision of Plaintiff's counsel to file the

14   complaint was a violation of Rule 11 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 11.

15   *Id.* at 9-10 (citing first to Rule 11 and then to § 1927).

16   　　　　**2.　　　NSP's Motion to Withdraw as Counsel**

17   　　　　Meanwhile, on June 25, 2025, Dhillon Law Group Inc. ("DLG") provided notice to NSP

18   that it intended to withdraw as counsel in the instant action because: "1) there has been a breach of

19   th[e] parties' engagement agreement; 2) Plaintiff's conduct renders it unreasonably difficult for

20   DLG to carry out representation effectively; and 3) there has been an irreconcilable breakdown of

21   the attorney-client relationship."  ECF No. 133.  DLG formally moved to withdraw on July 10,

22   2025.  *Id.*  Because: trial was imminent, the Court had been informed more than a year earlier that

23   NSP was no longer in business, and NSP could not prosecute its action without counsel, on July

24   14, 2025, the Court granted expedited briefing on the motion, and ordered Mr. Sanjiv Dhawan,

25   NSP's managing member, or another individual with the ability to act on behalf of Plaintiff, to

26   attend the hearing set for July 29, 2025.  ECF No. 136.  The Court directed NSP to "diligently

27   work to obtain new counsel" prior to the hearing and indicated that, if necessary, it would consider

28

United States District Court
Northern District of California

3

1    a brief continuance of the trial date once new counsel had been identified. *Id.* The Court

2    explicitly noted that "an entity [like NSP] requires counsel to litigate its complaint." *Id.*

3         As scheduled, on July 29, 2025, at 9:30 a.m., the Court held an in-person hearing on NSP's

4    counsel's motion to withdraw. ECF No. 138. Prior to ruling on what appeared to be a meritorious

5    request from counsel, the Court intended to ask Mr. Dhawan about his efforts to retain new

6    counsel and NSP's ability to proceed to trial approximately six weeks later, on September 15,

7    2025. Though counsel from DLG (Mr. Nitoj Singh) was in attendance, Mr. Dhawan, a California-

8    barred attorney, and the principal member of NSP, failed to appear, in violation of the Court's

9    order. Because, as the Court learned, the now-defunct NSP has no other members or agents, no

10   client representative appeared at the hearing making it impossible for the Court to assess how, if at

11   all, the case could proceed. Further, because NSP also failed to retain new counsel, if the Court

12   permitted DLG to withdraw at the hearing, NSP would be hamstrung—having no ability to

13   prosecute its case right before trial.[1]

14        Mr. Singh reported that shortly before the hearing, he received a call from Mr. Dhawan

15   stating that he was ill and would not attend. The Court took several breaks so that Mr. Singh

16   could talk further with Mr. Dhawan on the phone. The Court sought to assess whether in fact Mr.

17   Dhawan was experiencing a medical emergency that would reasonably prevent him from attending

18   the hearing and would necessitate a continuance. Following those calls, Mr. Singh reported to the

19   Court that Mr. Dhawan acknowledged he had not been in an accident and was not hospitalized,

20   "but he plans to be soon." July 29, 2025 Rough Tr. at 4.[2] Instead, Mr. Dhawan was at home due

21   to "heart issues, cardiac issues" that he'd "been having . . . for the past few months." *Id.* The

22   Court then asked Mr. Dhawan to attend by Zoom, but Mr. Dhawan claimed to have difficulty

23   accessing Zoom. The Court notes that Zoom was working, as evidenced by the presence of the

24   remote court reporter who was transcribing the proceeding via Zoom. As it was clear Mr. Dhawan

25

---

26   [1] It appears even by that point that NSP was failing to prosecute its case, failing to disclose experts
     by the deadline, *see* July 29, 2025 Rough Tr. at 14, despite having retained at least two experts.
27   *See* ECF No. 133.

28   [2] The Court cites to the rough transcript because, as of the date of this Order, the official transcript
     is not yet available.

United States District Court
Northern District of California

1    was having no difficulty talking with Mr. Singh on the phone, the Court told Mr. Dhawan (through

2    counsel) to call into the hearing proceedings and provided the courtroom phone number.  Mr.

3    Dhawan agreed.  The Court and all hearing participants then waited for Mr. Dhawan to call.  He

4    failed to do so.  At approximately 10:05 a.m., the Court proceeded with the hearing without Mr.

5    Dhawan.

6         During the hearing the Court orally issued an Order to Show Cause ("OSC") why

7    sanctions, including dismissal, should not be imposed for Mr. Dhawan's failure to appear on

8    behalf of NSP.  Mr. Poulson, on behalf of Padhye, incorrectly asserted that even if the Court

9    dismissed NSP's claims at the OSC, Padhye still had remaining counterclaims that would need to

10   be resolved.  Although the Court was unaware of any pending counterclaims, following the

11   hearing the Court reviewed the docket and confirmed that Padhye did not file counterclaims

12   against NSP.  The Court set August 19, 2025, as the hearing date for the OSC, as well as Padhye's

13   "Motion for Sanctions under 28 U.S.C. § 1927."

14        The following day, the Court issued a written order to show cause "why the Court should

15   not impose monetary or other sanctions, up to and including dismissal of this action, against [Mr.

16   Dhawan] personally, and the Plaintiff, for failing to appear at the hearing in violation of the

17   Court's July 14 Order."  ECF No. 139.  The Court required any opposition to the order be filed by

18   August 5, 2025 and include:

19        1.  A declaration from Mr. Dhawan, signed under penalty of perjury, explaining the

20            alleged medical emergency that prohibited his attendance in Court on July 29,

21            2025;

22        2.  A letter or other documentation from a medical provider confirming the medical

23            issues underlying Mr. Dhawan's medical emergency, including when he was first

24            treated for the alleged medical issue;

25        3.  Records demonstrating when and how Mr. Dhawan became aware of the issues

26            underlying his medical emergency on July 29, 2025; and

27        4.  Records demonstrating that Mr. Dhawan received treatment for his medical

28            emergency on or about July 29, 2025.

United States District Court
Northern District of California

1    *Id.*

2    Mr. Dhawan timely filed a declaration opposing the order.  ECF No. 141.  He asserted that

3    he has had hypertension for 10 years, and that he was experiencing symptoms on the morning of

4    July 29, 2025.  *Id.* ¶ 3, 9  ("I exhibited pronounced symptoms of severe headache, dizziness, and

5    difficulty in walking despite taking my prescribed medications.").  According to Mr. Dhawan, the

6    "added stress that morning could have had serious consequences" for him that could only be

7    avoided by resting until his symptoms resolved.  *Id.* ¶¶ 10-13.  Mr. Dhawan contends that "[o]n

8    the morning of July 29, 2025, [he] attempted to call in to the Court, and appear by Zoom, as

9    instructed by the Court, but could not due to technical issues with the Zoom application on [his]

10   laptop computer."  *Id.* ¶ 16.

11   Mr. Dhawan's response was inadequate and lacked veracity.  First, hypertension, also

12   known as high blood pressure, differs from what Mr. Dhawan claimed at the time kept him from

13   the July 29, 2025 hearing, namely "cardiac issues" that he'd "been having . . . for the past few

14   months."  July 29, 2025 Rough Tr. at 4.  Moreover, the Court ordered Mr. Dhawan to provide a

15   letter or other documentation from his medical provider confirming his medical emergency and

16   other records related to his illness.  Mr. Dhawan did not attach any documents to his declaration.

17   He also provided no explanation as to why he was unable, at a minimum, to call the Court on July

18   29, 2025, to participate in the hearing.  Mr. Dhawan again failed to abide by the Court's order, and

19   he provided no credible explanation for that failure.

20   **3.    Hearing on The Motion to Withdraw and Padhye's "Motion for**

21   **Sanctions"**

22   The Court held the OSC hearing on August 19, 2025.  Counsel appeared for both parties,

23   and Mr. Dhawan was in attendance.

24   Before taking up the OSC, the Court heard argument on Defendant's motion for sanctions

25   under 28 U.S.C. § 1927.  At the outset, the Court noted that the sanctions motion was "essentially

26   an untimely summary [judgment] motion."  August 19, 2025 Rough Tr. at 2.  Padhye's sanctions

27   section of the brief, made pursuant to Rule 11 and § 1927, was appended to its argument on the

28   merits and merely asserted that because Padhye viewed the case as unmeritorious, sanctions were

United States District Court
Northern District of California

1   warranted. *Id.* at 2-3. Mr. Poulson did not deny that his motion was based on the merits. *See id.*

2   at 3 ("I understand there are some similarit[ies] regarding the merits of [the motion,] but the merits

3   that show that the case should be foreclosed by summary judgment also prove that it should not

4   have been brought in the first place."). Mr. Poulson also denied bringing his motion under Rule

5   11, despite the Rule being the second cite[3] in the brief's discussion section. *See* ECF No. 126 at 9-

6   10. As the Court stated on the record, Padhye's motion "was untimely, it was [filed] after the

7   court told you [that] you could not file a motion for summary judgment, and [it was] framed as a

8   motion for sanctions[,] which is inappropriate" in light of the record in the case. August 19, 2025

9   Rough Tr. at 7. The Court denied Padhye's motion.

10      The Court then took up the OSC. As noted more fully on the record, the Court found that

11  Mr. Dhawan violated Court orders on two occasions: first by failing to appear at the July 29, 2025

12  hearing, and then by failing to provide credible testimony and failing to attach any medical

13  documentation to his declaration in opposition to the OSC. As the Court stated at the hearing, Mr.

14  Dhawan's declaration failed to "address virtually any of the things that the Court required that Mr.

15  Dhawan provide" in his opposition to the OSC. When the Court asked Plaintiff's counsel to

16  respond, Mr. Singh stated the following:

17          my understanding is the major component that was lacking was
            medical records and a statement or a letter from my client's physician.
18          My client -- my understanding -- tried to obtain that information, but
            the physician was traveling and would need to set an appointment
19          with Mr. Dhawan before he could provide the requisite information,
            and due to timing of the situation he wasn't able to provide it.
20

    *Id.* at 8. When the Court asked Mr. Singh to confirm that Mr. Dhawan had not received medical
21
    attention "immediately before or after the hearing," Mr. Singh confirmed that was his
22
    understanding. *Id.* Though not the fault of Mr. Singh, who was limited by what his client told
23
    him, this additional information reinforced that Mr. Dhawan's failure to appear on July 29, 2025,
24
    was unjustified and in direct contravention to the Court's order.
25

26

27  _____

    [3] The first cite was to *Christian v. Mattel, Inc.*, 286 F.3d 1118 (9th Cir. 2002) (which Mr. Poulson
    mistitled as *Christianson* in his brief). That case is explicitly about the "scope of Rule 11." *Id.* at
28  1118.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    The Court found that Mr. Dhawan lacked candor when he failed to appear in person, failed

2    to join the July 29, 2025 hearing by Zoom, and failed to call into the Court.  The Court found that

3    Mr. Dhawan again lacked candor when he attempted to explain his behavior in his declaration,

4    which differed from the representations that he made at the hearing.  The Court concluded it could

5    not trust Mr. Dhawan to be truthful, a serious concern for someone who is a current member of the

6    California bar.  *See* Rough Tr. at 8.[4]  The Court found, on the record, that Mr. Dhawan's failure to

7    appear was not in good faith, and that he twice failed to comply with the Court's orders.  *Id.* at 9.

8    Further, as of the date of the OSC, DLG's motion to withdraw had been pending for six

9    weeks, and Mr. Dhawan knew of DLG's intent to withdraw for at least two additional weeks

10    preceding that motion.  Mr. Dhawan had apparently been unable or unwilling to engage new

11    counsel to replace DLG, even though (pursuant to the Court's standing order for civil cases) all the

12    pre-trial documents were due the following week, and the jury trial was set to begin in less than a

13    month.  Yet without counsel, even if it was interested in doing so, the defunct NSP could not

14    proceed in court.  Given the totality of the circumstances, the Court dismissed NSP's case without

15    prejudice.

16    **II.    DISCUSSION**

17    The Court has inherent power to sanction parties or their attorneys for improper conduct.

18    *Chambers v. Nasco, Inc.*, 501 U.S. 32, 43–46 (1991); *Roadway Express, Inc. v. Piper*, 447 U.S.

19    752, 766 (1980); *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001).  This includes the "inherent

20    power to dismiss an action when a party has willfully deceived the court and engaged in conduct

21    utterly inconsistent with the orderly administration of justice."  *Anheuser–Busch, Inc. v. Natural*

22    *Beverage Distrib.*, 69 F.3d 337, 348 (9th Cir. 1995) (quoting *Wyle v. R.J. Reynolds Indus., Inc.*,

23    709 F.2d 585, 589 (9th Cir. 1983)); *see Combs v. Rockwell Intern. Corp.*, 927 F.2d 486, 488 (9th

24    Cir. 1991) ("Dismissal is an appropriate sanction for falsifying deposition.").  Because dismissal is

25

26    ───────────────

    [4] The Court spoke directly to Mr. Dhawan during the hearing: "I'm not going to ask you to
    provide testimony. I'm not going to put you under oath because frankly I have concerns about the

27    veracity of the declaration that you filed [and] have great concerns about the fact that you failed to
    even make a phone call into the court when you claim you couldn't appear at the last hearing." *See*

28    August 19, 2025 Rough Tr. at 8.

1    such a harsh penalty, courts reserve such use for extreme circumstances.  *Wyle*, 709 F.3d at 589.

2    "It is well settled that dismissal is warranted where . . . a party has engaged deliberately in

3    deceptive practices that undermine the integrity of judicial proceedings . . ." *Anheuser–Busch,*

4    *Inc.*, 69 F.3d at 348.

5             In determining whether to dismiss an action for failure to comply with a court order, the

6    Court must weigh "(1) the public's interest in expeditious resolution of litigation; (2) the court's

7    need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy

8    favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions."  *In*

9    *re Phenylpropanolamine (PPA) Products Liability Litig.*, 460 F.3d 1217, 1226 (9th Cir. 2006)

10   (internal quotations and citations omitted).  These factors guide a court in deciding what to do, but

11   they are not conditions that must be met for a court to take action.  *Id.*

12            Under the factors, dismissal is the proper sanction in this case.  First, an expeditious

13   resolution of this two-year old case with an unrepresented, defunct plaintiff is nearly impossible.

14   Mr. Dhawan, the principal and only member of NSP, failed to appear at the hearing on the motion

15   to withdraw in violation of the Court's order.  Further, Mr. Dhawan has not demonstrated that he

16   has made any attempt to find substitute counsel to represent NSP even though trial is scheduled to

17   begin in less than a month, and the Court as well as DLG advised Mr. Dhawan the NSP must have

18   counsel to proceed.[5]  The Court finds no other reasonable way to interpret Mr. Dhawan's actions

19   then to conclude that NSP is no longer willing or able to prosecute this case.

20            As to factor two, NSP's failure to comply with court orders plainly interferes with the

21   Court's docket.  The instant case was set for a jury trial to begin on September 15, 2025.  The

22   Court was prepared to begin review of pre-trial materials next week.  Even assuming NSP could

23   get new counsel (and NSP has offered no information suggesting that it is making any such effort),

24   that counsel would not reasonably be able to proceed with pretrial and trial in the coming weeks.

25   A Court's available dates for trial are limited and are typically (as was the case here) scheduled

26

27   —————————————

28   [5] DLG's motion to withdraw stated that counsel advised Mr. Dhawan "that if Plaintiff does not
     retain counsel[,] [NSP] would be at risk of default in this action."  ECF No. 133.

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1    long in advance.  It is now too late to substitute another trial into the September 15, 2025 slot,

2    which interferes both with the Court's docket and the Court's ability to efficiently and justly

3    adjudicate all matters before it.

4         The third factor, prejudice to Defendant, also favors dismissal as sanction.  If anything,

5    Defendant is the beneficiary of Plaintiff's missteps.  The Court denied Defendant's sanctions

6    motion, and Defendant has no pending motions or counterclaims.  Dismissing this action saves

7    Padhye from having to defend against allegations related to his business practices, including the

8    time and expense of trial.  Finally, if the case were to continue, the Court would address Padhye's

9    imprudent and untimely decision to bring a motion for summary judgment (styled as a motion for

10   sanctions) despite explicit and repeated Court orders stating he was not permitted to do so.  In

11   short, Padhye is not prejudiced by the sanction of dismissal.

12        Public policy favors disposition on the merits.  Yet, in this instance, there is no reasonable

13   path to a disposition on the merits.  NSP is without counsel and cannot proceed.  The Court has no

14   information that Mr. Dhawan has any intention of seeking counsel for NSP, furthering NSP's

15   claims, or complying with court orders.  With a week before pre-trial materials are due, the case is

16   at a standstill.

17        Finally, the Court has attempted less drastic sanctions by issuing an OSC warning Mr.

18   Dhawan that his failure to adequately respond to the OSC could result in dismissal of this action.

19   As a member of the California bar, Mr. Dhawan should have fully grasped the gravity of that

20   warning.  Nevertheless, he again failed to comply with the Court's order, and provided no credible

21   reason for that failure.  Further, the Court has imposed the lesser sanction of dismissal without

22   prejudice.  Should NSP have the interest (and necessary counsel) to refile its claims, it may do so

23   in a new complaint.

24        **IT IS SO ORDERED.**

25   Dated:  August 22, 2025

26

27                                                            Noël Wise
                                                             United States District Judge

28

10